1   JULIAN HAMMOND, CA Bar No. 268489
    Hammond.julian@gmail.com
2   HammondLaw, P.C.
    1180 S. Beverly Drive, Suite 610
3   Los Angeles, CA  90035
    (310) 601-6766
4   (310) 295-2385 (Fax)

5   ARI CHERNIAK, CA Bar No. 290071
    ari.cherniak@gmail.com
6   HammondLaw, P.C.
    1829 Reisterstown Rd. Suite 410
7   Baltimore, MD 21208
    (443) 739-5758
8   (310) 295-2385 (Fax)

9   Attorneys for Plaintiff and Putative Class

10

11              **UNITED STATES DISTRICT COURT**

12           **NORTHERN DISTRICT OF CALIFORNIA**

13              **SAN FRANCISCO DIVISION**

14

15  MELISSA BLEAK, individually and on      Case No.: 3:13-CV-13-5653 CRB
    behalf of all others similarly situated,
16                                          **PLAINTIFF'S OPPOSITION TO**
                    Plaintiff,              **DEFENDANT'S MOTION TO COMPEL**
17                                          **ARBITRATION AND STAY CASE**
    vs.
18                                          Date:        April 25, 2014
    SPOTIFY USA, INC., a Delaware           Time:        10:00 a.m.
19  Corporation                             Courtroom:   6 – 17th Floor

20                  Defendant.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................................. 2

III.  ARGUMENT ..................................................................................................................... 5

   A.  Plaintiff Did Not Agree to Arbitrate Her Claims Against Spotify. ......................... 5

   B.  Plaintiff's Claims Fall Within the Exception to Mandatory Arbitration. ................ 6

   C.  Spotify's Arbitration Clause is Unenforceable Because it is Illusory. ................... 8

   D.  The Arbitration Clause is Procedurally and Substantively Unconscionable, Permeated with Illegality, and Unenforceable. ................................................................................ 10

     1.  The Arbitration Clause is Procedurally Unconscionable. ................................. 11

     2.  The Arbitration Clause is Substantively Unconscionable. ............................... 14

       (a)  The Arbitration Clause lacks mutuality because it carves out claims from mandatory arbitration that Spotify is likely to bring. ....................................... 15

       (b)  The Arbitration Clause lacks mutuality because it allows Spotify to unilaterally modify the agreement. ................................................................................ 15

       (c)  The Arbitration Clause lacks mutuality because it prohibits the arbitrator from awarding injunctive and declaratory relief. ................................................. 16

       (d)  Administrative filings fees are unrecoverable and substantially more than the value of the claim, thereby effectively foreclosing Plaintiff's pursuit of the claims. ............... 17

       (e)  The Arbitration Clause's one-year statute of limitations is unconscionable. .............. 18

       (f)  The Arbitration Clause's provision limiting discovery is unconscionable. ................ 19

       (g)  Limitations on Damages and Liability are Unconscionable. ....................................... 20

     3.  The Entire Arbitration Agreement is Unenforceable Because the Unconscionable Provisions Cannot Be Severed from the Arbitration Clause. ................................................ 21

IV.  CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza LLC  Penn Plaza LLC  v. Pyett,*
   556 U. S. 247 (2009) ........................................................................... 17

*A & M Produce Co. v. FMC Corp.,*
   135 Cal. App. 3d 473 (1982) ...................................................... 11, 13

*Abramson v. Juniper Networks, Inc.,*
   115 Cal. App. 4th 638 (2004) .............................................................. 11

*Ajamian v. CantorCO2e, L.P.,*
   203 Cal. App. 4th 771 (2012) .............................................................. 14

*American Express Corp. v. Italian Colors Restaurant,*
   570 U.S. __, 133 S. Ct. 2304 (2013) ............................................... 2. 17

*AT&T Mobility LLC v. Concepcion,*
   131 S. Ct. 174 (2011) ............................................................... 5, 10, 11

*AT&T v. Ting,*
   319 F.3d 1126 (9th Cir. 2003) ............................................................ 12

*Beynon v. Garden Grove Medical Group,*
   100 Cal. App. 3d 698 (1980) ............................................................... 21

*Binder v. Aetna Life Ins. Co.,*
   75 Cal. App. 4th 832 (1999). ................................................................ 5

*Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.,*
   6 Cal. App.4th 1266 (1992) ................................................................... 5

*Bragg v. Linden Research, Inc.*
   487 F 3.d 1447 (7th Cir. 1996) ........................................................... 13

*Bruni v. Didion,*
   160 Cal. App. 4th 1272 (2008) ........................................................... 13

*Carey v. 24 Hour Fitness, USA, Inc.,*
   669 F.3d 202 (5th Cir. 2012) ................................................................ 8

*Chavarria v. Ralphs Grocery Co.,*
   733 F.3d 916 (9th Cir. 2013) ......................................................... 11, 18

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.,*
   207 F.3d 1126 (9th Cir. 2000) .............................................................. 5

*Circuit City Stores, Inc. v. Adams,*
   279 F.3d 889 (9th Cir. 2002) .............................................................. 18

*Davis v. O'Melveny & Myers*,
   485 F.3d 1066 (9th Cir. 2007) ........................................................... 12, 16

*Doubt v. NCR Corp.*,
   2010 U.S. Dist. LEXIS 102484 (N.D. Cal. Sep. 13, 2010) ....................... 19, 22

*Dumais v. Am. Golf Corp.*,
   299 F.3d 1216 (10th Cir. 2002) .................................................................. 9

*Ferguson v. Corinthian Colleges, Inc.*,
   733 F.3d 928 (9th Cir. 2013) ................................................................... 16

*Ferguson v. Countrywide Credit Indus., Inc.*,
   298 F.3d 778 (9th Cir. 2002) ................................................................... 11

*Fitz v. NCR Corp.*,
   118 Cal. App. 4th 70 (2004) ................................................................... 14

*Floss v. Ryan's Family Steak Houses, Inc.*,
   211 F.3d 306 (6th Cir. 2000) .................................................................... 9

*Franco v. Athens Disposal Co.*,
   171 Cal. App. 4th 1277 (2009) ................................................................ 22

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U. S. 20 (1991) ............................................................................... 17

*Green Tree Financial Corp. -Ala. v. Randolph*,
   531 U. S. 79 (2000) ............................................................................... 18

*Grosvenor v. Qwest Corp.*,
   854 F. Supp. 2d 1021 (D. Colo. Feb. 23, 2012) .......................................... 9

*Guifu Li v. A Perfect Day Franchise, Inc.*,
   2011 U.S. Dist. LEXIS 6985 (N.D. Cal. Jan. 25, 2011) ................................ 5

*Gutierrez v. Autowest, Inc.*,
   114 Cal. App. 4th 77 (2003) ................................................................... 13

*Harper v. Ultimo*,
   113 Cal. App. 4th 1402 (2003) .......................................................... 11, 14

*Harris v. Blockbuster. Inc.*,
   622 F. Supp. 2d 396 (N.D. Tex. 2009) ....................................................... 9

*Hooters of Am., Inc. v. Phillips*,
   173 F.3d 933 (4th Cir. 1999) .................................................................... 9

*In re Zappos, Inc.*,
   893 F. Supp. 2d 1058 (D. Nev. 2012) ............................................... 6, 8, 9

*Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*,
   133 Cal. App. 4th 396 (2005). ................................................................ 21

iii

*Ingle v. Circuit City Stores, Inc.,*
   328 F.3d 1165 (9th Cir. 2003) ........................................................................ 16

*Kinney v. United HealthCare Servs., Inc.,*
   70 Cal. App. 4th 1322 (1999) .................................................................. 11, 19

*Little v. Auto Stiegler, Inc.,*
   29 Cal. 4th 1064 (2003) ............................................................................... 12

*Martinez v. Master Protection Corp.,*
   118 Cal. App. 4th 107 (2004) ....................................................................... 19

*Mercuro v. Superior Court,*
   96 Cal. App. 4th 167 (2002) ................................................................... 16, 22

*Merkin, et al. v. Vonage Am. Inc., et al.,*
   2014 U.S. Dist. LEXIS 14055 (C.D. Cal. Feb. 3, 2014) ............................... 15

*Mitsubishi Motors v. Soler Chrysler-Plymouth,*
   473 U. S. 614 (1985) ................................................................................. 2, 18

*Morris v. Redwood Empire Bancorp,*
   128 Cal. App. 4th 1305 (2005) ..................................................................... 14

*Morrison v. Amwav Corp.,*
   517 F.3d 248 (5th Cir. 2008) .......................................................................... 9

*Nagrampa v. MailCoups, Inc.,*
   469 F.3d 1257 (9th Cir. 2006) ...................................................................... 12

*Nyulassy v. Lockheed Martin Corp.,*
   120 Cal. App. 4th 1267 (2004) ..................................................................... 13

*Ontiveros v. DHL Exp. (USA), Inc.,*
   164 Cal. App. 4th 494 (2008) ....................................................................... 19

*Parada v. Super. Ct.,*
   176 Cal. App. 4th 155 (2009) ................................................................. 12, 14

*Peleg v. Nieman Marcus Group, Inc.,*
   204 Cal. App. 4th 1425 (2012) ....................................................................... 8

*Penn v. Ryan's Family Steak Houses, Inc.,*
   269 F.3d 753 (7th Cir. 2001) .......................................................................... 9

*Roman v. Superior Court,*
   172 Cal. App. 4th 1462 (2009) ..................................................................... 13

*Samaniego v. Empire Today LLC,*
   205 Cal. App. 4th 1138 (2012) ................................................ 11, 12, 14, 29

*Sanchez v. W. Pizza Enters., Inc.,*
   172 Cal. App. 4th 154 (2009) ................................................................. 12, 22

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ........................................................... 7

*Snow v. BE & K Constr. Co.*,
   126 F. Supp. 2d 5 (D. Me. 2001) .................................................... 9

*Soltani v. W. & S. Life Ins. Co.*,
   258 F.3d 1038 (9th Cir. 2001) ......................................................... 14

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal. 4th 1109 (2013) .............................................................. 5, 11

*Sparks v. Vista Del Mar Child & Family Services*,
   207 Cal. App. 4th 1511(2012) ................................................. 8, 12, 14

*Stirlen v. Supercuts, Inc.*
   51 Cal. App. 4th 1519 (1997) ...................................................... 16, 18

*Szetela v. Discover Bank*,
   97 Cal. App. 4th 1094 (2002) ........................................................ 12

*Trivedi v. Curexo Technology Corp.*,
   189 Cal. App. 4th 387 (2010) ................................................... 12, 14

*Trumbull v. Century Mktg. Corp.*,
   12 F. Supp. 2d 683 (N.D. Ohio 1998) ............................................ 9

*ValueSelling Assocs.. LLC v. Temple.*
   2009 US Dist. LEXIS 104174 (S.D. Cal. Nov. 5, 2009) ............... 7

*Wherry v. Award, Inc.*,
   192 Cal. App. 4th 1242 (2011) ...................................................... 19

*Zullo v. Superior Court*,
   197 Cal. App. 4th 477 (2011) ........................................................ 14


**Statutes**


9 U.S.C. § 2 .................................................................................. 10

Bus. & Prof. Code § 17600 ......................................................... 3, 6

Bus. & Prof. Code § 17602 ............................................................ 7

Bus. & Prof. Code §§ 17200-17204 .............................................. 3

Bus. & Prof. Code §§ 17600-17604 .............................................. 7

Civ. Code § 1670.5 .................................................................. 11, 21

Federal Rule of Civil Procedure 54 ............................................. 18

**<u>Other Authorities</u>**

AAA Commercial Arbitration Rules and Mediation Procedures

E-5 ............................................................................................................. 4

AAA Consumer-Related Disputes Supplementary Procedures

p. 12 ........................................................................................................... 18

Rule C-1 ..................................................................................................... 4

Rule C-5 ......................................................................................... 2, 4, 20

Rule C-7 ............................................................................. 4, 17, 20, 21

## I. **INTRODUCTION**

Defendant Spotify USA, Inc. ("Spotify" or "Defendant") cannot prevail on its motion to compel arbitration for several reasons. First, Spotify submits no direct evidence that Plaintiff ever agreed to the purported arbitration clause ("Arbitration Clause") contained in the Spotify Terms and Conditions of Use ("T & C")[1], nor is there any direct evidence that Plaintiff ever agreed to the T & C. Indeed, Plaintiff did not agree to the T & C and did not assent to the Arbitration Clause. *See* Declaration of Melissa Bleak ("Bleak Decl.") at ¶ 1-2. Thus, there was simply no contract to arbitrate formed.

Second, Plaintiff's claims are not subject to mandatory arbitration, but may be brought in court because they are "claims related to allegations of . . . or unauthorized use of the Spotify Service," which are specifically exempted from arbitration under the T & C.

Third, even if a contract had been formed and Plaintiff's claims were subject to arbitration, the Arbitration Clause would be unenforceable as an illusory promise because Spotify expressly retained the right to modify its T & C (including the Arbitration Clause contained within them) without prior notice to the subscriber, unless Spotify itself, at its sole discretion, considered those modifications "material." Thus, Spotify could avoid mandatory arbitration altogether by simply deleting the Arbitration Clause from the T & C, while Plaintiff could not. Such a unilateral modification clause strips the agreement of any mutuality and renders it illusory and therefore unenforceable.

Fourth, even if the Arbitration Clause were a non-illusory contract that applied to Plaintiff's claims, it would still be unenforceable because it is permeated with an unlawful purpose, and its unconscionable provisions cannot be severed or restricted to cure the illegality. Specifically, the Arbitration Clause (and the T & C ) invokes the Commercial Arbitration Rules ("AAA Commercial Rules") and the Supplementary Procedures for Consumer Related Disputes of the American Arbitration Association ("AAA Supplementary Consumer Rules"), but does not attach or include those

---

[1] The T & C are attached to the Declaration of Patrick Lambert.
[2] AAA Supplementary Consumer Rule C-5 provides: "Where no claims or counterclaims exceed $10,000, the dispute shall be resolved by the submission of documents. Any party, however, may ask for a hearing. [¶] The arbitrator may also decide that a hearing is necessary. [¶] The arbitrator will

OPP. TO MOTION TO COMPEL ARBITRATION *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

rules; it requires subscribers to arbitrate all claims they are likely to bring against Spotify, but excludes claims that Spotify is most likely to bring (intellectual property claims, theft, piracy, and unauthorized use of the Spotify Service) from the arbitration requirement; it prohibits the arbitrator from awarding injunctive and declaratory relief – the very relief Plaintiff seeks here; it impermissibly shortens the time period for filing claims to one year, despite the longer limitations period that applies to Plaintiff's claims; it impermissibly limits Spotify's aggregate liability for all of Plaintiff's claims to the amount paid by Plaintiff for three months of service (i.e. $29.97); it provides for no discovery, with the claims being decided through a desk arbitration that does not allow for an exchange of documents (with the documents that the parties rely upon being sent directly to the American Arbitration Association ("AAA"), who is responsible for sending them to the arbitrator), or permit depositions;[2] and it does not allow for reallocation of the $200 mandatory administrative filing fee to Defendant, thus depriving the Plaintiff from effectively vindicating her rights (the filing fee for arbitration, which is otherwise recoverable in Court by the prevailing Plaintiff, is six times the maximum amount she can recover in arbitration). These pervasive legal defects permeate the Arbitration Clause and render it unenforceable.

Fifth, even if the arbitration agreement was not found to be unconscionable, the agreement would be found to be invalidated on public policy grounds because it "operat[es] . . . as a prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U. S. 614, 637, n. 19 (1985); *see also American Express v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013). Here, because the filing fee of $200 is unrecoverable, and the maximum claimable damages are $29.97, the arbitral forum operates as a prospective waiver of a party's right to pursue statutory remedies, as the filing fees are more than six times the amount that is actually recoverable in arbitration. Accordingly, the Court should deny Spotify's motion to compel arbitration.

## II.   STATEMENT OF FACTS

---

[2] AAA Supplementary Consumer Rule C-5 provides: "Where no claims or counterclaims exceed $10,000, the dispute shall be resolved by the submission of documents. Any party, however, may ask for a hearing. [¶] The arbitrator may also decide that a hearing is necessary. [¶] The arbitrator will establish a fair process for submitting the documents. [¶] Documents must be sent to the AAA. These will be forwarded to the arbitrator."

Plaintiff filed this action on November 6, 2013 on behalf of herself and all other individuals who purchased a subscription to Spotify's music streaming service through their desktop computers in California since December 1, 2010, seeking damages, restitution, injunctive and declaratory relief for Spotify's failure to obtain subscribers' affirmative consent to the automatic renewal or continuous service offer terms in violation of California's Automatic Renewal Law (Bus. & Prof. Code §§ 17600-17604) and the Unfair Competition Law (Bus. & Prof. Code §§ 17200-17204).[3] *See* First Amended Complaint ("FAC") ¶ 18.

Spotify submitted no evidence that Plaintiff gave her assent to the Arbitration Clause contained in the inconspicuous T & C. Rather, according to the T & C, Plaintiff entered into a binding contract with Defendant, simply upon using the Spotify website. *See* Declaration of Patrick Lambert ("Lambert Decl."), Doc. 19, Ex. F (T & C) § 1.[4] Spotify's T & C contained an Arbitration Clause, which provides that "any dispute, claim or controversy arising out of relating in any way to the Spotify Service or your use thereof . . . shall be determined by mandatory binding arbitration." *Id.* § 19, ¶ i. The Arbitration Clause further provides that the arbitration will be governed by the AAA Commercial and AAA Supplementary Consumer Rules, but it does not attach or even hyperlink those rules. *See id.* The Arbitration Clause specifically carves out "any claims seeking to enforce, protect, or determine the validity and ownership of any intellectual property rights," and "any claims related to allegations of theft, piracy or unauthorized use of the Spotify Service" from mandatory arbitration and provides "that these claims … shall be exclusively decided by courts…." *Id.* §19, ¶ ii. The Arbitration Clause requires that subscribers proceed individually and not as part of a class or representative action or consolidation, and it prohibits the arbitrator from awarding declaratory or injunctive relief. *Id.* § 19, ¶ iii. Spotify's T & C also limit Spotify's aggregate liability for all Plaintiff's claims to $29.97. *See Id.* § 16, ¶ ii (limiting recovery to amount paid to Spotify during three months preceding the claim). In this case Plaintiff's claim for restitution is from September 2013. *See* FAC ¶ 44. Lastly, the Arbitration Clause provides that arbitration must be commenced "within ONE (1) YEAR after the date the party asserting the claim first knows or reasonably should know of the act, omission or default

---

[3] Plaintiff filed her operative FAC on November 21, 2013.
[4] Exhibit F to the Lambert Declaration is hereafter referred to as "T & C."

OPP. TO MOTION TO COMPEL ARBITRATION *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

giving rise to the claim; and there shall be no right to any remedy for any claim not asserted within that time period." T & C § 19, ¶ iv.

The governing AAA Commercial Rules and the AAA Supplementary Consumer Rules, as explained above, are not contained in, attached, or hyperlinked in the T & C or the Arbitration Clause. When AAA Supplementary Consumer Rules and AAA Commercial Rules conflict, the AAA Supplementary Consumer Rules apply. *See* Declaration of Julian Hammond ("Hammond Decl."), Ex. A at 10, Rule C-1 (a). For claims under $10,000 (Plaintiff's claim for individual restitution falls under this category), the arbitration proceeds by submission of documents to the arbitrator through the AAA for a "desk arbitration." *See* Hammond Decl., Ex. A at 10, Rule C-5. A desk arbitration involves submission of documents to the AAA, which then forwards them to the arbitrator.[5] *Id.* The arbitrator is required to make his or her Award within 14 calendar days of the submission of the documents. Hammond Decl., Ex. A, Rule C-7(a).

Section 2 of the T & C allows Spotify to "in [its] discretion, make changes to the Spotify Service and Agreements," which includes the T & C and Arbitration Clause. Spotify need not notify subscribers of these changes, unless it, at its sole discretion, considers them "material." *Id*. Whether notified or not, subscribers are deemed to have accepted the changes by continuing to use the service. *Id.* As explained below, these circumstances render the Arbitration Clause unenforceable.

At the time of the filing of the Initial Complaint, Spotify offered in California an Unlimited Plan for $4.99 per month and a Premium Plan for $9.99 per month. Plaintiff's allegations include that Spotify failed to obtain her, and other similarly situated persons, affirmative consent to the agreement containing the automatic renewal offer terms and/or continuous service offer terms. One of Plaintiff's arguments as to why Defendant failed to obtain Plaintiff's, and other similarly situated Class Members', affirmative consent is that there was no reference whatsoever to the T & C on the Unlimited Plan check out page and there was only reference to "Terms of Service" (a document that

---

[5] Where the Claimant asks for a hearing (the Rules do not specify whether, upon such a request, the request shall be granted) the Expedited Procedures of the AAA Commercial Rules apply. These Rules provide for an exchange of all exhibits that the Parties intend to rely on two days prior to the hearing (scheduled 30 days after the appointment of the arbitrator), *again with no discovery whatsoever. See* Declaration of Julian Hammond ("Hammond Decl."), Ex. B, E-5.

did not exist anywhere on Defendant's website), on the Premium Plan check out page, and there was no hyperlink to the T & C. In addition, there was no check box, or other mechanism for Plaintiff (and other similarly situated persons), to give her affirmative consent to the agreement containing the automatic renewal offer terms, and continuous service offer terms.

Within ten days of the filing of the Initial Complaint, Spotify changed the Spotify website by hyperlinking the T & C to the words "Terms of Service" (which were not previously hyperlinked). Declaration of Ari Cherniak ("Cherniak Decl.") ¶ 8. *See also* Declaration of James Whitehead ("Whitehead Decl."), Doc. No. 20, Ex. 1, p. 4, fn. 3.[6] Defendant also eliminated the Unlimited Plan. Cherniak Decl. at ¶ 8. The significance of these changes is that pursuant to the arbitration agreement, there is no discovery and no exchange of documents, unless there is an oral hearing. Rather, the arbitration proceeds upon the submission of documents to the Arbitrator through the AAA. Without being able to obtain the relevant discovery, as to the state of the Spotify website throughout the relevant liability period, Plaintiff will not be able to prove her case.

## III. ARGUMENT

### A. Plaintiff Did Not Agree to Arbitrate Her Claims Against Spotify.

The Court's first step when considering a motion to compel arbitration is to determine whether a valid contract exists. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). A party moving to compel arbitration must "prove, by a preponderance of the evidence, that [the arbitration] agreement exists." *Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 U.S. Dist. LEXIS 6985, *12-13 (N.D. Cal. Jan. 25, 2011) (citation omitted).

As a general matter, an arbitration agreement is unenforceable where it is invalid under ordinary state-law principles that govern the formation of contracts. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("*Concepcion*"); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1124-25 (2013). Under California law, mutual manifestation of an agreement – mutual assent – is required to create a binding and enforceable contract between the parties. *See Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). Generally, "a party can be compelled to submit

---

[6] The statement in Whitehead's declaration that the hyperlink was added on November 26, 2013 is incorrect. *See* Cherniak Decl., ¶¶ 6-8 and Exs. B and C thereto.

a dispute to arbitration only where [s]he has agreed in writing to do so." *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.,* 6 Cal. App. 4th 1266, 1271 (1992) (citation omitted).

A federal district court applying analogous Nevada contract law found no agreement to arbitrate where there was no direct evidence that Plaintiffs assented to the terms of use containing an arbitration clause. In *In re Zappos, Inc.,* 893 F. Supp. 2d 1058 (D. Nev. 2012) an online retailer's terms of use hyperlink could be found on every webpage, between the middle and bottom of each page, visible if a user scrolls down, but defendant produced no direct evidence that Plaintiffs had clicked on the hyperlink. *Id.* at 1064. On these facts, the court explained that "[w]ithout direct evidence that Plaintiffs click on the Terms of Use, we cannot conclude that Plaintiffs ever viewed, let alone manifested assent to, the Terms of Use." *Id*. Thus, the court held that "[w]here, as here, there is no acceptance by Plaintiffs, no meeting of the minds, and no manifestation of assent, there is no contract . . . ." *Id.* at 1065.

The same holds true here. Spotify utterly fails to submit any direct evidence, let alone a preponderance of the evidence, showing that Plaintiff accepted the T & C containing the Arbitration Clause. Indeed, it admits that "Spotify's records do not indicate which specific buttons Ms. Bleak clicked on to reach the sign-up process." Lambert Decl. ¶ 6. Moreover, Plaintiff attests that she did not agree to the T & C, nor did she click on any link containing the T & C, let alone know that they existed and that they contained an Arbitration Clause. Declaration of Melissa Bleak ("Bleak Decl.") ¶¶ 1-2. Because there was no manifestation of assent or acceptance by Plaintiff, there is no binding Arbitration Clause under California law.

**B.** **Plaintiff's Claims Fall Within the Exception to Mandatory Arbitration.**

Even if it is found that Plaintiff accepted the T & C, including the Arbitration Clause, Plaintiff's claims fall within the specific carve out in the Arbitration Clause of "any claims related to allegations of . . . unauthorized use of the Spotify Service."[7] T & C § 19, ¶ ii. As such, they are "NOT subject to mandatory arbitration." *Id.*

Cal. Bus. & Prof. Code § 17600 was enacted to end the practice of ongoing charging of

_____

[7] Spotify Service is defined as, and includes, "Spotify service, websites, or software applications." *See* T & C § 1.

consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service. *See* FAC ¶ 9. Cal. Bus. & Prof. Code § 17602(a)(2) made unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to: "Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms."

Here, Plaintiff alleges that after she provided her credit card information to Spotify, Spotify unlawfully charged her credit card, without first obtaining her affirmative consent to the agreement containing the automatic renewal terms, in contravention of Cal. Bus. & Prof. Code § 17602 (a)(2), and has continued to do so since September 2013. *Id.* It is undisputed that Plaintiff "registered for Spotify's free service through a web browser on a personal computer," that she "provided her credit card information to Spotify during the upgrade process," and that Spotify charged $9.99 to Plaintiff's credit card. *See* Whitehead Decl., Doc. 20, ¶ 6. This was all done using the Spotify Service, as defined above, which includes "websites." As such, by charging Plaintiff's credit card in violation of the Cal. Bus. & Prof. Code § 17602 (a)(2), Defendant used its "Service" (by charging the Plaintiff's credit card) in an unauthorized manner. Plaintiffs allegations therefore fall within the exception to mandatory arbitration because they are allegations that relate to Spotify's unauthorized use of its Service. *See* Lambert Decl., Ex. F, Doc. 19-6, (T & C) §19, ¶ ii.

Any attempt to limit the scope of the exception is nullified by the fact that the exception is extremely broad, applying to "any claim" that is "related to" Spotify's unauthorized use of its systems, which would of course include unlawfully charging Plaintiff's credit card. *Id.*; *see Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 712 (9th Cir. 1999) (The term "arising in connection with" "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract."); *see also ValueSelling Assocs., LLC v. Temple,* 2009 U.S. Dist. LEXIS 104174, * 6 (S.D. Cal. Nov. 5, 2009) ("A clause providing for the arbitration of 'any claim or controversy arising out of or relating to the agreement' has been held to be the paradigm of a broad

clause.").

**C.**     **Spotify's Arbitration Clause is Unenforceable Because it is Illusory.**

Under California law, a "'promise where the promisor retains an unlimited right to decide later the nature or extent of his or her performance'" is an "illusory" promise "that is too indefinite for legal enforcement….'" *Peleg v. Nieman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1439 (2012) (quoting 1 Williston on Contracts (4th ed. 2007) § 4:27, pp. 804-805). "An agreement to arbitrate is illusory if, as here, the [defendant] can unilaterally modify the [agreement]." *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. App. 4th 1511, 1523 (2012) ("*Sparks*"); *see also Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205-209 (5th Cir. 2012) (applying analogous Texas contract law, court found arbitration agreement in employee handbook unenforceable where company retained unilateral right to modify or terminate the arbitration provision).

In *Sparks*, defendant moved to compel arbitration on the grounds that plaintiff agreed to arbitrate any claims arising out of the termination of his employment by signing the company's employee handbook, which contained an arbitration agreement. The handbook contained a clause immediately following the arbitration provision entitled "'Amendments, Revisions and Modifications,'" which provided that the handbook "'may be amended, revised and/or modified by [defendant] at any time without notice.'" 207 Cal. App. 4th at 1516. The plaintiff signed a document acknowledging his receipt of the employee handbook, that he would be governed by its contents, and that the employer "'may change, rescind, or add to any policies, benefits or practices described in the Handbook from time to time in its sole and absolute discretion, with or without notice.'" *Id.* Based on these facts, the trial court denied defendant's petition to compel. The Court of Appeal affirmed the denial, finding that there was never an agreement to arbitrate between the parties because defendant retained the right to unilaterally modify the handbook, which rendered any agreement to arbitrate illusory and unenforceable. *Id.* at 1523.

The Court in *In re Zappos, Inc.* reached the same result where the terms of use gave Zappos the unilateral right to change its terms of use, including the arbitration clause, at any time without notice to the consumer. 893 F. Supp. 2d at 1066. The court explained, "[i]n effect, the agreement allows

OPP. TO MOTION TO COMPEL ARBITRATION  *Bleak v. Spotify USA Inc.*, Case No. CV 13-05653 CRB

Zappos to hold its customers and users to the promise to arbitrate while reserving its own escape hatch." *Id.* "Because the Terms of Use binds consumers to arbitration while leaving Zappos free to litigate or arbitrate wherever it sees fit, there exists no mutuality of obligation." *Id.* The court thus found the arbitration agreement "illusory and therefore unenforceable." *Id.*

As pointed out in *In re Zappos*, *Inc.,* 893 F. Supp. 2d at 1065-1066, several courts have held arbitration agreements unenforceable based on such unilateral modification clauses. *See,* e.g., *Morrison v. Amway Corp.*, 517 F.3d 248, 257-58 (5th Cir. 2008) (finding arbitration agreement illusory and unenforceable where defendant held unilateral authority to amend or eliminate the arbitration program); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."); *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 759-61 (7th Cir. 2001) (denying motion to compel arbitration where agreement was illusory because one party had "sole, unilateral discretion to modify or amend"); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-316 (6th Cir. 2000) (arbitration agreement was "fatally indefinite" and illusory because employer "reserved the right to alter applicable rules and procedures without any obligation to notify, much less receive consent from," other parties); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (holding that employer's ability to modify rules "in whole or in part" without notice to employee renders arbitration agreement illusory); *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1034 (D. Colo. Feb. 23, 2012) ("Because Qwest reserved an unfettered ability to modify the existence, terms and scope of the arbitration clause, it is illusory and unenforceable."); *Harris v. Blockbuster. Inc.*, 622 F. Supp. 2d 396, 398-99 (N.D. Tex. 2009) (arbitration clause in internet video purchase agreement illusory because defendant reserved the right to alter the terms of the agreement at any time by giving notice to the consumer); *Snow v. BE & K Constr. Co.*, 126 F. Supp. 2d 5, 14-15 (D. Me. 2001) (holding arbitration agreement illusory and unenforceable because employer "reserve[d] the right to modify or discontinue [the arbitration] program at any time"); *Trumbull v. Century Mktg. Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) (finding no binding arbitration agreement where "the plaintiff would be bound by all the terms of the

handbook while defendant could simply revoke any term (including the arbitration clause) whenever it desired. Without mutuality of obligation, a contract cannot be enforced.").

Likewise here, the Arbitration Clause is unenforceable because it is an illusory promise. Section 2 of the T & C grants Spotify the unilateral right to modify the Arbitration Clause,[8] allowing Spotify to avoid the promise to arbitrate simply by amending the provision, while leaving Plaintiff and other subscribers bound to arbitrate their claims. Spotify reserves the right to only notify subscribers of these changes when, in its sole discretion, it considers them "material." Even then there is no time period for prior notice of such changes. Because Spotify retains the right to determine, in its own discretion, whether changes are material, it, in essence, has no obligation to notify the consumer of such changes. If Spotify does deem a modification material, it may provide notice through the website. *See* T & C § 2. In addition, section 14 of the T & C,[9] provides Spotify with the right to terminate the agreement and/or suspend access to the Service at any time, for any reason. Such unilateral modification and termination clauses render the Arbitration Clause illusory, invalid and unenforceable.

### D. The Arbitration Clause is Procedurally and Substantively Unconscionable, Permeated with Illegality, and Unenforceable.

Even if the Arbitration Clause were not invalid for being illusory and lacking mutual assent, it would be unenforceable because it is unconscionable. Under the Federal Arbitration Act ("FAA"), an arbitration agreement is valid, irrevocable and enforceable except on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (preempting state

---

[8] Section 2 states: "Occasionally, we may, in our discretion, make changes to the Spotify Service and Agreements. When we make changes to the Agreements that we consider material, we'll notify you through the Service. By continuing to use the Service after those changes are made, you are expressing and acknowledging your acceptance of the changes."

[9] Section 14 reads, in part, as follows: "Spotify may terminate the Terms or suspend your access to the Spotify Service at any time . . . If . . . Spotify terminate[s] the Terms, . . . you agree that Spotify shall have no liability or responsibility to you and Spotify will not refund any amounts that you have already paid, to the fullest extent permitted under applicable law."

law unconscionability rule that categorically invalidated arbitration agreements in consumer cases with class action waivers).

Recent decisions have made clear that California's general unconscionability analysis under contract law as applied to arbitration agreements is not preempted by the FAA. *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th at 1124-25 (state courts may continue to enforce unconscionability rules that do not "interfere[] with fundamental attributes of arbitration" post-*Concepcion* (citation omitted); *Samaniego v. Empire Today LLC,* 205 Cal. App. 4th 1138, 1150 (2012) ("*Samaniego*") (unconscionability defense under California law survives *Concepcion*); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 926-27 (9th Cir. 2013) (California unconscionability rules applied to invalidate arbitration agreement).

"Under California law, courts may refuse to enforce any contract found 'to have been unconscionable *at the time it was made*,' or may 'limit the application of any unconscionable clause.'" *Concepcion,* 131 S. Ct. at 1746 (citing Cal. Civ. Code § 1670.5 (a)) (emphasis added). "A finding of unconscionability requires 'a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results.'" *Id.* (citing *Armendariz v. Found. Health Psychcare Servs.,* 24 Cal. 4th 83, 114 (2000) ("*Armendariz*"). Although both elements must be present before a contract provision is rendered unenforceable on grounds of unconscionability, they are reviewed on a "sliding scale where the greater the evidence of procedural unconscionability, the less evidence is needed of substantive unconscionability," and vice-versa. *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003); *see also Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 656 (2004).

## 1. The Arbitration Clause is Procedurally Unconscionable.

"Procedural unconscionability 'concerns the manner in which the contract was negotiated and the circumstances of the parties at that time[,]" focusing on factors of oppression or surprise. *Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 783 (9th Cir. 2002) (citing *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1327-28 (1999)); *see also A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982). Oppression addresses the weaker party's absence of choice

OPP. TO MOTION TO COMPEL ARBITRATION  *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

and unequal bargaining power that results in "no real negotiation." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d at 486.  Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party. *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1571 (2009).  Unfair surprise results when the stronger party benefits from the weaker party's lack of an informed choice. *Sanchez v. W. Pizza Enters., Inc.*, 172 Cal. App. 4th 154, 173 (2009).  Unfair surprise can be evidenced by the failure to provide a copy of the arbitration rules by which the employee would be bound and strongly supports a finding of procedural unconscionability. *See Sparks*, 207 Cal. App. 4th at 1523; *Trivedi v. Curexo Technology Corp.*, 189 Cal. App. 4th 387, 393 (2010) (agreeing with "numerous" California decisions holding that "failure to provide a copy of the arbitration rules… supported a finding of procedural unconscionability").

In assessing procedural unconscionability, a court deciding the issue under California law focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1073 (9th Cir. 2007).  An agreement or any portion thereof is procedurally unconscionable if "the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation[.]" *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002).  Thus, a contract is procedurally unconscionable under California law if it is "a standardized contract, drafted by the party of superior bargaining strength that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *AT&T v. Ting*, 319 F.3d 1126, 1148 (9th Cir. 2003) (citations omitted); *see also Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003); *Samaniego*, 205 Cal. App. 4th at 1145-46; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting *Armendariz*, 24 Cal. 4th at 117).

Here, Spotify's attempt to impose mandatory arbitration on Plaintiff through the Arbitration Clause is both highly oppressive and unfairly surprising.  First, the Arbitration Clause was part of a standardized contract, drafted by Spotify, who had the superior bargaining strength, that relegated the Plaintiff only the opportunity to adhere to the contract or reject it on a take it or leave it basis as a condition of use, (in fact it was imposed on all users of the website, immediately upon access), with no

opportunity to negotiate its terms. [10]  Second, the element of surprise is not a necessary prerequisite for procedural unconscionability where there are indicia of oppressiveness.  See *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1281 (2004).  Here there are several indicia of oppressiveness.

First, the terms of the arbitration provision are buried within a lengthy and densely worded contract prepared by Spotify.  *See A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d at 486 ("'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms."); *see also Gutierrez v. Autowest, Inc.,* 114 Cal. App. 4th 77, 87 (2003).  The arbitration provision is located on the eleventh page of a thirteen page T & C document, in the nineteenth of twenty sections.  *See Bruni v. Didion*, 160 Cal. App. 4th 1272, 1293 (2008) ("*Bruni*") ("The arbitration provisions take up roughly one full page in a 30-page booklet."); *see also Bragg v. Linden Research, Inc*. 487 F 3.d 1447, 1450 (7th Cir. 1996).  The arbitration clause is hidden in single spaced text, in an inconspicuous size font and color.  When Spotify sought to draw the readers' attention to important language, it did so, by using ALL CAPITAL LETTERS, as it did, for example, in § 16 of the T&C where it limited its liability.  *Cf. Bruni*, 160 Cal. App. 4th at 1293 (finding a "strong showing of surprise" when the "the arbitration provisions are not distinguished from the rest of the booklet by either bolding or capitalization").  Spotify does not separately provide subscribers with the arbitration agreement, nor do subscribers separately agree to the arbitration agreement.  *Cf. Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1467, 1470-1471 (2009) (finding surprise where the agreement to arbitrate was "contained in a separate paragraph initialed by [the plaintiff]").

Second, the Arbitration Clause was contained in a document referred to as "Terms and Conditions of Use," which was accessible via an inconspicuous hyperlink named "Legal."  The "Legal" hyperlink was located at the very bottom of the Spotify website[11] and appeared in smaller and

---

[10] Section 1 of the T & C states: "Thanks for choosing Spotify ("Spotify", "we", "us", "our"). By using the Spotify service, websites, or software applications (together, the "Spotify Service" or "Service"), including by purchasing or receiving Codes or Limited Offers, you are entering into a binding contract with our local company in your country of residence (your "Local Country") if applicable or the company listed in this chart. Your agreement with us includes these Terms and Conditions of Use ("Terms") and our Privacy Policy (together with the Mobile Terms where applicable, the "Agreements"). If you don't agree with these Terms, then please don't use the Service."
[11] To get to the bottom of the website, a user would have to scroll down 5 full pages.

lighter colored font than the rest of the text on the website. *See* Cherniak Decl. ¶ 9; *see also* Lambert

Decl., Ex. B (Doc. 19-2) that shows no link to the Terms and Conditions of Use.

Third, the Arbitration Clause provided that the arbitration will be governed by the AAA

Commercial Rules and AAA Supplementary Consumer Rules, but failed to attach or otherwise provide

them to Plaintiff (such as by providing a hyperlink), thus requiring her "to go to another source" to

understand the rules by which she would be bound. The authorities are clear that this factor is

significant and weighs in favor of finding procedural unconscionability. *See,* e.g., *Sparks*, 207

Cal.App.4th at 1523; *Samaniego*, 205 Cal.App.4th at 1146; *Ajamian v. CantorCO2e, L.P.,* 203 Cal.

App. 4th 771, 797 (2012); *Zullo v. Superior Court,* 197 Cal. App. 4th 477, 485-86 (2011); *Trivedi v.

Curexo Tech.*, 189 Cal. App. 4th at 393.

These factors imbue the Arbitration Clause with a high degree of procedural unconscionability.

### 2.  The Arbitration Clause is Substantively Unconscionable.

A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent

that it "shock[s] the conscience." *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001);

see also *Parada v. Super. Ct.*, 176 Cal. App. 4th at 1573 (quoting *Morris v. Redwood Empire Bancorp*,

128 Cal. App. 4th 1305, 1322 (2005)). "Substantive unconscionability focuses on overly harsh or one-

sided results." *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 723 (2004) (citation omitted). To avoid a

finding of substantive unconscionability, arbitration agreements must contain at least "a modicum of

bilaterality." *Armendariz*, 24 Cal. 4th at 119.

Because there is a high degree of procedural unconscionability here, however, only minimal

substantive unconscionability is required to render the Arbitration Clause unconscionable. *See id.* at

114; see also *Harper v. Ultimo*, 113 Cal. App. 4th at 1406 (where there is a high level of procedural

unconscionability, there need not be much substantive unconscionability to find an agreement to

arbitrate unenforceable). Nonetheless, as explained below, the Arbitration Clause contains a *high

degree* of substantive unconscionability, as evidenced by its overly harsh and one-sided terms.

### (a) The Arbitration Clause lacks mutuality because it carves out claims from mandatory arbitration that Spotify is likely to bring.

First, the Arbitration Clause is substantively unconscionable because it lacks mutuality. As discussed above, the Arbitration Clause requires Plaintiff and other subscribers to arbitrate "*any dispute, claim or controversy arising out of or relating in any way to the Spotify Service or [their] use thereof….*" T & C § 19, ¶ i (emphasis added). In sharp contrast, the Arbitration Clause carves out "any claims seeking to enforce, protect, or determine the validity and ownership of any intellectual property rights," and "any claims related to allegations of theft, piracy or unauthorized use of the Spotify Service" from mandatory arbitration and provides "that these claims … shall be exclusively decided by courts…." *Id.* § 19, ¶ ii. These carve-outs are claims that only Spotify is likely to bring.

Indeed, in *Merkin, et al. v. Vonage Am. Inc., et al.,* 2014 U.S. Dist. LEXIS 14055, *30-31 (C.D. Cal. Feb. 3, 2014) the court found an arbitration agreement containing almost identical exceptions (disputes over the validity of intellectual property rights and disputes related to allegations associated with unauthorized use, theft or piracy of service) to be lacking mutuality and substantively unconscionable. Although the exceptions purported to be bilateral, they specifically excluded the type of claims likely to be brought by the company and least likely to be brought by the subscriber. As explained by the California Supreme Court, "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24 Cal. 4th at 120. When only the weaker party's claims are subject to arbitration, and there is no reasonable justification, the agreement lacks the requisite degree of mutuality. *Id.* at 119–120.

### (b) The Arbitration Clause lacks mutuality because it allows Spotify to unilaterally modify the agreement.

Second, Spotify's ability to unilaterally modify the T & C (*see* T & C § 2) and terminate the agreement at any time for any reason (see *id.* § 14) and hence unilateral ability to delete the mandatory arbitration requirement, also eviscerates the Arbitration Clause of mutuality and renders it

substantively unconscionable. Moreover, as discussed above, notice of these changes is not required unless, Spotify, in its sole discretion, considers them "material" and even then there is no time period for prior notice of such changes. See *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (holding that a unilateral modification clause, even though it provided 30 days' notice of any change, was substantially unconscionable). Moreover, Spotify could also unilaterally and without notice modify the procedures to be followed in arbitration (since the Agreement trumps the AAA Rules) if it deems them immaterial. Hence, Spotify is afforded the opportunity not only to unilaterally change the standards for deciding claims, but the procedures for determining them.

### (c) The Arbitration Clause lacks mutuality because it prohibits the arbitrator from awarding injunctive and declaratory relief.

Third, California courts consistently have found arbitration provisions unconscionable where both parties to an agreement are bound to arbitration, but the stronger party may seek "other equitable relief" through the court system. *Davis v. O'Melveny & Myers*, 485 F.3d at 1081; *see also Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176 (2002) ("*Mercuro*"); *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1541-42 (1997) ("*Stirlen*").

In the instant case, the Arbitration Clause's prohibition on the award of declaratory and injunctive relief is unduly harsh, one-sided, and lacks a "modicum of bilaterality." This provision effectively precludes subscribers from bringing any claims for injunctive and declaratory relief in any forum because they are required to arbitrate all of their claims and the arbitrator is prohibited from awarding such relief. Spotify, however, as explained above, may obtain injunctive and declaratory relief in court for the types of claims it is likely to bring – intellectual property claims and claims of theft, piracy or unauthorized use of the Spotify Service. While the Ninth Circuit recently clarified that the California rule exempting claims for public injunctive relief from arbitration is preempted by the FAA based on recent decisions of the U.S. Supreme Court, it expressly left open the question of enforceability of an arbitration agreement where the arbitrator concludes that he or she does not have the power to award injunctive relief. *See Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("We decline to resolve in advance the question of what, if any, court remedy Plaintiffs

might be entitled to should the arbitrator determine that it lacks the authority to issue the requested injunction."). Here, the Arbitration Clause expressly prohibits the arbitrator from awarding injunctive and declaratory relief – the very relief Plaintiff seeks on behalf of herself and other Spotify subscribers (*see* FAC, Prayer for Relief ¶¶ B, C & F) – and it precludes Plaintiff from going to court to seek such relief. Under these circumstances, the Arbitration Clause's prohibition of vital relief for Plaintiff and other subscribers renders it substantively unconscionable.

Spotify may argue that the AAA Supplementary Consumer Rules provide that the arbitrator may grant any remedy, relief, or outcome the parties could have received in court. *See* Rule C-7. This argument, however, is precluded by the terms of the arbitration agreement, which provide that arbitration will be governed by the AAA Commercial Rules and AAA Supplementary Consumer Rules "as modified by these Agreements." *See* T & C §19, ¶ i (emphasis added).

> **(d)** **Administrative filings fees are unrecoverable and substantially more than the value of the claim, thereby effectively foreclosing Plaintiff's pursuit of the claims.**

Fourth, the high administrative and filing fees associated with filing an arbitration matter with the AAA pursuant to the AAA Supplementary Consumer Rules and AAA Commercial Arbitration Rules, combined with the applicable arbitration rules that do not allow the arbitrator to reallocate the filing and administrative fees (unless the arbitrator determines the claim was filed for the purposes of harassment or is patently frivolous – however, here the claims in arbitration will only be brought by the subscribers), effectively foreclose the pursuit of Plaintiff's claims. The Supreme Court's recent decision in *American Express Corp. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310-2311 (2013) affirmed the existence of an exception to the Federal Arbitration Act, whereby the Court expressed a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies." 473 U. S., at 637, n. 19 (emphasis added). Subsequent cases have similarly asserted the existence of an "effective vindication" exception. *See*, e.g., *14 Penn Plaza LLC v. Pyett,* 556 U. S. 247, 251-274 (2009); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U. S. 20, 28 (1991). The exception finds its origin in the desire to prevent

"prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors v. Soler Chrysler-Plymouth,* 473 U. S. at 637, n. 19 (emphasis added). That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. *See Green Tree Financial Corp.-Ala. v. Randolph,* 531 U. S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights"); *see also Chavarria v. Ralphs Grocery Co.,* 733 F.3d at 927 (holding that the administrative and filing costs imposed by Ralphs' arbitration policy were so high that they effectively foreclosed the pursuit of plaintiff's claim. "Ralphs has constructed an arbitration system that imposes non-recoverable costs on employees just to get in the door.")

In the present case, the filing fee pursuant to the Supplementary Consumer Rules is $200. *See* AAA Supplementary Consumer Rules, p. 12, § (i). There are also hearing fees associated with consumer arbitrations. *See id.* p. 12. An arbitrator cannot reallocate the filing or hearing fees. *See id*. This is unlike actions filed in Court, where rules of procedure provide for the prevailing party to recover his court costs, including the filing fee. *See* Federal Rule of Civil Procedure ("FRCP") 54. These rules effectively foreclose Plaintiff from pursuing her claims on an individual basis because the filing fee, which is not recoverable by a prevailing plaintiff, is more than six times the maximum possible recovery of $29.97 (*see* T & C § 16).

**(e)    The Arbitration Clause's one-year statute of limitations is unconscionable.**

Several courts have found arbitration clauses that shorten the statute of limitations for claims unconscionable. For example, the court in *Stirlen,* 51 Cal. App. 4th at 1542 found an arbitration agreement containing a one-year statute of limitations and providing that the failure to request arbitration within the prescribed period "shall constitute a complete waiver of all rights to raise any claims in any forum, arising out of any dispute described herein" to be unconscionable and unenforceable in its entirety because it shortened the limitations period normally available for plaintiff's claims. *See also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894-95 (9th Cir. 2002) (one-year statute of limitations in arbitration agreement unenforceable because it forced the plaintiff to

arbitrate his claims "without affording him the benefit of the full range of statutory remedies");

*Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 117 (2004) (holding that a shortened six-month statute of limitations in an arbitration agreement was unconscionable); *Samaniego,* 205 Cal. App. 4th at 1147 (same); *Wherry v. Award, Inc.,* 192 Cal. App. 4th 1242, 1249 (2011) (same).

Likewise here, the arbitration clause's one-year statute of limitations denies Plaintiff and other subscribers the "full range of statutory remedies" by eviscerating claims that accrued during the statutorily applicable limitations period. For example, the Unfair Competition Law, under which Plaintiff brings some of her claims, provides for a four-year statute of limitations (*see* Bus. & Prof. Code § 17208) and Plaintiff seeks relief for violations that date back to December 1, 2010, when the Automatic Renewal Law first took effect in California. *See* FAC ¶ 2.

In contrast, the shortening of the limitations period does not apply to claims that are excluded by the arbitration agreement [12] (i.e. intellectual property, theft, piracy, and unauthorized use claims likely to be brought only by Spotify). Spotify's attempt to truncate the limitations period only for the claims likely to be brought by subscribers and escape liability where it could not do so in court is unduly harsh and oppressive and renders the arbitration clause substantively unconscionable.

**(f)      The Arbitration Clause's provision limiting discovery is unconscionable.**

Arbitration agreements that severely limit the parties' rights to discovery are substantively unconscionable. *See,* e.g., *Ontiveros v. DHL Exp. (USA), Inc.*, 164 Cal. App. 4th 494, 515 (2008) ("Ontiveros"); *Doubt v. NCR Corp.*, 2010 U.S. Dist. LEXIS 102484, *17-20 (N.D. Cal. Sep. 13, 2010) *Kinney*, 70 Cal. App. 4th at 1332. For example, the court in *Ontiveros*, 164 Cal. App. 4th at 513, found an agreement that allowed plaintiff to take the deposition of only one individual, where plaintiff's counsel legitimately estimated that at least 15 to 20 depositions were needed, substantively unconscionable. The court in *Kinney* similarly found an arbitration agreement that limited the use of interrogatories seeking identification of witnesses and limited each party to 25 document requests and two depositions substantively unconscionable. 70 Cal. App. 4th at 1332. "Given that [the defendant]

---

[12] *See* T & C § 19, ¶ iv: "Any arbitration must be commenced by filing a demand for arbitration with the AAA within ONE (1) YEAR after the date the party asserting the claim first knows or reasonably should know of the act, omission or default giving rise to the claim; and there shall be no right to any remedy for any claim not asserted within that time period."

OPP. TO MOTION TO COMPEL ARBITRATION *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

1    is presumably in possession of the vast majority of evidence that would be relevant to … claims

2    against it, the limitations on discovery, although equally applicable to both parties, work to curtail

3    [plaintiff's] ability to substantiate any claim against [it]." *Id*.

4        Here, the arbitration clause imposes draconian discovery limitations that curtail Plaintiff's

5    ability to substantiate her statutory claims against Spotify. The AAA Supplementary Consumer Rules

6    provided for by the arbitration clause *do not allow* for any discovery (including any depositions or any

7    exchange of documents), nor does the arbitrator have power to order any discovery. *See* Hammond

8    Decl., Ex. B, AAA Commercial Rules R-22(b). Moreover, claims valued at $10,000 or less – such as

9    Plaintiff's claims – are subject to "desk" arbitration, which involves submission of documents to the

10    AAA, which then forwards them to the arbitrator.[13] *Id.,* Ex. A, AAA Supplementary Consumer Rules

11    C-5. The arbitrator is required to make his or her Award within 14 calendar days of the submission of

12    the documents. *Id.,* AAA Supplementary Consumer Rules C-7(a). Desk arbitration results in an

13    especially one-sided proceeding where, as here, Defendant possesses all the relevant documents and

14    witnesses necessary for Plaintiff to support her claims. Under the AAA Supplementary Consumer

15    Rules, Plaintiff has no right to secure access to all the documents that show the changes made to the

16    website, when they were made, how they were made, and how they were effectuated. Such restrictive

17    discovery precludes Plaintiff from obtaining sufficient information from the Company to support her

18    claims, which involve company archived documents, historical screen shots, corporate level, manager

19    level and potentially thousands of class member witnesses spanning over three years of potential

20    liability. The Arbitration Clause's failure to provide for formal discovery renders it substantively

21    unconscionable.

22        **(g)**      **Limitations on Damages and Liability are Unconscionable.**

23        "The principle that an arbitration agreement may not limit statutorily imposed remedies such as

24    punitive damages and attorney fees appears to be undisputed." *Armendariz,* 24 Cal. 4th at 103.

25    Further, whether punitive or consequential damages are statutorily authorized or "otherwise allowed,"

---

[13] Where the Claimant asks for a hearing (the Rules do not specify whether, upon such a request, the request shall be granted) the Expedited Procedures of the AAA Commercial Rules apply. These Rules provide for an exchange of all exhibits that the Parties intend to rely on two days prior to the hearing (scheduled 30 days after the appointment of the arbitrator).

arbitration provisions seeking to deprive plaintiffs of these remedies are unconscionable. *Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 412-13 (2005).

Here, the arbitration agreement purports to limit the damages that an arbitrator can award.[14] Specifically, § 16 of the T & C (as incorporated into the arbitration agreement) does not allow any indirect, special, incidental, punitive, exemplary or consequential damages, arising out of the use, or inability to use the Spotify Service, regardless of the legal theory and limits Spotify's aggregate liability for all claims relating to the Spotify Service to no more than the amounts paid by the subscriber during the prior three months in question. Moreover, § 14 of the T & C (as incorporated into the arbitration agreement) disclaims any liability for suspending access to or terminating a subscriber's service prior to the end of the subscription term and provides that no refund will be issued for any remaining time on the subscription. These provisions are so one-sided that it "shocks the conscience."

### 3. The Entire Arbitration Agreement is Unenforceable Because the Unconscionable Provisions Cannot Be Severed from the Arbitration Clause.

The final question is whether the presence of the unconscionable provisions warrants a refusal to enforce the entire arbitration agreement, or whether the offending provisions may be severed to avoid an illegal result. Civ. Code § 1670.5(a); *Armendariz*, 24 Cal. 4th at 121-24. "The overarching inquiry is whether "'the interests of justice ... would be furthered' by severance." *Armendariz*, 24 Cal. 4th at 124 (quoting *Beynon v. Garden Grove Medical Group*, 100 Cal. App. 3d 698, 713 (1980). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.* at 124. "[M]ultiple defects indicate a systematic effort to impose

---

[14] The Arbitration Clause provides that the arbitration will be governed by the AAA Rules, as modified by these "Agreements." The T & C defines Agreement as including the entire T & C. The AAA Supplementary Consumer Rule C-7(c) provides that the "arbitrator may grant any remedy, relief or outcome that the parties could have received in court." Hence, since the arbitration clause provides that the AAA Rules are modified by the T & C, the arbitrator's power to award certain relief is limited by §§ 14 and 16 of the T & C.

arbitration on [a plaintiff] not simply as an alternative to litigation, but as an inferior forum that works to the [company]'s advantage." *Id.* (equating "multiple" defects with two unlawful provisions). Several courts have held an arbitration agreement unenforceable in its entirety where it contained two defects. *See id.*; *Franco v. Athens Disposal Co.*, 171 Cal. App. 4th 1277, 1303 (2009); *Sanchez*, 172 Cal. App. 4th at 181. In *Doubt v. NCR Corp.*, this Court invalidated an arbitration agreement that had two substantively unconscionable provisions, finding that "[t]o compel arbitration of Plaintiff's claims would grant an undeserved benefit to Defendant, which drafted the [agreement] as a means to compel arbitration as an inferior forum that works to its advantage." 2010 U.S. Dist. LEXIS 102484, at * 22.

Here, the Arbitration Clause is critically deficient in several ways. It unlawfully shortens the statute of limitations, carves out claims from arbitration that Spotify is more likely to bring, contains an unconscionably unilateral arbitration clause, unlawfully prohibits injunctive and declaratory relief, requires a nonrefundable filing fee that exceeds the value of Plaintiff's claims, limits Spotify's damages and liability, fails to attach the AAA Rules that it incorporates, and fails to provide sufficient discovery for Plaintiff to substantiate her claims. "Such multiple defects indicate a systematic effort to impose arbitration . . . as an inferior forum that works to the company's advantage." *Armendariz*, 24 Cal. 4th at 124; *Mercuro*, 96 Cal. App. 4th at 185. The substantively unconscionable provisions cannot be cured by striking or limiting application of identifiable provisions. Rather, the arbitration agreement is so "'permeated' by unconscionability [it] could only be saved, if at all, by a reformation beyond the court's authority." *Mercuro*, 96 Cal. App. 4th at 182; *Armendariz*, 24 Cal. 4th at 122-25. Because the Arbitration Clause in this case is permeated with illegality and unconscionability, it is unenforceable in its entirety.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Spotify's motion to compel this action to arbitration.

Dated: March 10, 2014

_____
JULIAN HAMMOND