JOSEPH E. ADDIEGO III (CA State Bar No. 169522)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: joeaddiego@dwt.com

STEPHEN M. RUMMAGE (*Admitted pro hac vice*)
CANDICE M. TEWELL (*Admitted pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone: (206) 622-3150
Fax: (206) 757-7700
Email: steverummage@dwt.com
candicetewell@dwt.com

Attorneys for Defendant
SPOTIFY USA INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MELISSA BLEAK, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SPOTIFY USA INC., a Delaware corporation,

Defendant.

Case No. CV 13-05653 CRB

**DEFENDANT SPOTIFY USA INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Date: April 25, 2014
Time: 10:00 a.m.
Courtroom: 6 – 17th Floor

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The Federal Arbitration Act Manifests a Strong Policy Favoring Arbitrating Disputes that Fall within an Arbitration Clause, as This Dispute Does. ..... 2

1. Ms. Bleak Agreed to the Arbitration Provision. ..... 2

2. Ms. Bleak's Claims Fall within the Arbitration Provision. ..... 4

B. The FAA Requires the Arbitrator Decide the Validity of the Terms & Conditions as a Whole ..... 5

1. The Arbitrator, Rather than the Court, Must Determine Whether Spotify's Obligations under the Terms & Conditions Are Illusory. ..... 6

2. Spotify's Terms & Conditions Contain Enforceable, Not Illusory, Promises. ..... 8

C. Spotify's Arbitration Provision Offers a Fair and Efficient Means of Resolving Disputes, and Thus Is Enforceable under California Law. ..... 10

1. Spotify's Arbitration Provision Is Neither Oppressive nor Surprising. ..... 10

2. Spotify's Arbitration Provision Is Fair and Bilateral. ..... 13

a. The Arbitration Provision Has Sufficient Mutuality. ..... 13

b. Spotify's Modification Provision Is Conscionable. ..... 15

c. Limiting Forms of Relief Is Appropriate. ..... 15

d. The Cost of AAA Consumer Arbitration Is Reasonable. ..... 16

e. The One-Year Statute of Limitation Is Reasonable ..... 18

f. AAA's Discovery Provisions Comport with California Law ..... 19

g. Spotify's Terms & Conditions Limit Liability as Permitted by Law. ..... 20

D. California Allows Severance of Contract Clauses in the Interest of Justice. ..... 21

III. CONCLUSION ..... 21

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

**Cases**

*24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199 (1998) ... 9, 15

*Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638 (2004) ... 13

*American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) ... 16

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) ... 13, 20, 21

*Asmus v. Pac. Bell*, 23 Cal. 4th 1 (2000) ... 8, 9

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ... 11, 19, 20

*Automatic Vending Co. v. Wisdom*, 182 Cal. App. 2d 354 (1960) ... 9

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) ... 6, 7

*Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, 2014 WL 116442 (N.D. Cal. Jan. 13, 2014) ... 12

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 130 S. Ct. 2772 (2006) ... 1, 6, 7, 8

*Chavez v. Bank of Am.*, 2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) ... 21

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ... 2

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002) ... 18

*Cisneros v. Am. Gen. Fin. Servs., Inc.*, 2012 WL 3025913 (N.D. Cal. July 24, 2012) ... 10

*Curry v. Volt Info. Sciences*, 2008 WL 719214 (S.D.N.Y. Mar. 18, 2008) ... 7

*Damato v. Time Warner Cable, Inc.*,
2013 WL 3968765 (E.D.N.Y. July 31, 2013) ........ 6, 7, 17

*Diversified Roofing Corp. v. Pulte Home Corp.*,
2012 WL 6628962 (D. Ariz. Dec. 19, 2012) ........ 7, 8

*Dumais v. Am. Golf Corp.*,
299 F.3d 1216 (10th Cir. 2000) ........ 7

*F. Jacobus Transport. Co. v. Gallagher Bros. Sand & Gravel Corp.*,
161 F. Supp. 507 (S.D.N.Y. 1958) ........ 8

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013) ........ 16, 17

*Flores v. Am. Seafoods Co.*,
335 F.3d 904 (9th Cir. 2003) ........ 8

*Floss v. Ryan's Family Steak Houses, Inc.*,
211 F.3d 306 (6th Cir. 2000) ........ 7

*GECCMC 2005-C1 Plummer Street Office LP v. JP Morgan Chase Bank*,
671 F.3d 1027 (9th Cir. 2012) ........ 5

*Gilroy v. Seabourn Cruise Line, Ltd.*,
2012 WL 1202343 (W.D. Wash. Apr. 10, 2012) ........ 7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ........ 17

*Grosvenor v. Qwest Corp.*,
854 F. Supp. 2d 1021 (D. Colo. 2012) ........ 7

*Guadagno v. E*Trade Bank*,
592 F. Supp. 2d 1263 (C.D. Cal. 2008) ........ 4

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) ........ 8

*Harris v. Blockbuster, Inc.*,
622 F. Supp.2d 396 (N.D. Tex. 2009) ........ 7

*Hauenstein v. Softwrap Ltd.*,
2007 WL 2404624 (W.D. Wash. Aug. 17, 2007) ........ 4

*Hendricks v. AT&T Mobility, LLC*,
823 F. Supp. 2d 1015 (N.D. Cal. 2011) ........ 11, 13

*Hooters of Am., Inc. v. Phillips*,
173 F.3d 933 (4th Cir. 1999) ........ 7

*In re DirecTV Early Cancellation Fee Litig.*, 810 F. Supp. 2d 1060 (C.D. Cal. 2011) .......... 14, 15

*In re Zappos, Inc.*, 893 F. Supp. 2d 1058 (D. Nev. 2012) .......... 4, 6, 7

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) .......... 15

*Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309 (1986) .......... 12

*Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018 (N.D. Cal. 2009) .......... 12

*James G. Freeman & Assocs., Inc. v. Tanner*, 56 Cal. App. 3d 1 (1976) .......... 9

*John v. Hanlees Davis, Inc.*, 2013 WL 3458183 (E.D. Cal. July 9, 2013) .......... 15

*Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir. 1989) .......... 8

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105 (1999) .......... 12

*Lee v. Goldline Intern'l, Inc.*, 2011 WL 1739989 (C.D. Cal. Apr. 27, 2011) .......... 20

*Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125 (C.D. Cal. 2006) .......... 12

*Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991 (N.D. Cal. 2012) .......... 19

*Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107 (2004) .......... 18

*McIntosh v. Adventist Health/West St. Helena Hosp.*, 2013 WL 968293 (N.D. Cal. Mar. 12, 2013) .......... 9, 10, 15

*Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (2002) .......... 19

*Merkin v. Vonage Am. Inc.*, 2014 WL 457942 (C.D. Cal. Feb. 3, 2014) .......... 2, 3, 4, 14

*Moreno v. Sanchez*, 106 Cal. App. 4th 1415 (2003) .......... 18

*Morrison v. Amway Corp.*,
517 F.3d 248 (5th Cir. 2008) .......... 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 4

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) .......... 6

*Order of United Commercial Travelers v. Wolfe*,
331 U.S. 586 (1947) .......... 18

*PacifiCare Health Sys., Inc. v. Book*,
538 U.S. 401 (2003) .......... 20

*Peleg v. Neiman Marcus Grp., Inc.*,
204 Cal. App. 4th 1425 (2012) .......... 9

*Peng v. First Republic Bank*,
219 Cal. App. 4th 1462 (2013) .......... 9, 11, 12, 13, 15

*Penn v. Ryan's Family Steak Houses, Inc.*,
269 F.3d 753 (7th Cir. 2001) .......... 7

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) .......... 13, 14, 15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .......... 6, 7

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 7, 8, 20

*Ruhe v. Masimo Corp.*,
2011 U.S. Dist. LEXIS 104811 (C.D. Cal. Sept. 16, 2011) .......... 21

*Samaniego v. Empire Today LLC*,
205 Cal. App. 4th 1138 (2012) .......... 18

*Serpa v. Cal. Surety Investigations, Inc.*,
215 Cal. App. 4th 695 (2013) .......... 8, 10, 11, 15

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) .......... 10

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .......... 4

*Snow v. BE&K Constr. Co.*,
126 F. Supp. 2d 5 (D. Me. 2001) .......... 7

DAVIS WRIGHT TREMAINE LLP

*Soltani v. W. & S. Life Ins. Co.*,
258 F.3d 1038 (9th Cir. 2001) .......... 13, 18

*Sparks v. Vista Del Mar Child & Family Servs.*,
207 Cal. App. 4th 1511 (2012) .......... 6

*Stirlen v. Supercuts, Inc.*,
51 Cal. App. 4th 1519 (1997) .......... 13

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) .......... 3, 4

*Trend Homes, Inc. v. Superior Court*,
131 Cal. App. 4th 950 (2005) .......... 11

*Trumbull v. Century Mktg. Corp.*,
12 F. Supp. 2d 683 (N.D. Ohio 1998) .......... 7

*Wherry v. Award, Inc.*,
192 Cal. App. 4th 1242 (2011) .......... 18

*Zaborowski v. MHN Gov't Servs., Inc.*,
936 F. Supp. 2d 1145 (N.D. Cal. 2013) .......... 18

**Statutes**

California Business & Professions Code § 17602 .......... 1, 5

DAVIS WRIGHT TREMAINE LLP

# I. INTRODUCTION

Hoping to avoid arbitration, plaintiff Melissa Bleak resorts to arguing she enjoyed Spotify's music streaming service free from ***any*** contractual obligations. She claims (a) she never entered into a contract (even though she "signed-up and registered for Spotify's Premium subscription plan," Bleak Decl. [Dkt. 30] ¶ 1); (b) if she had a contract, it was illusory; and (c) if it was not illusory, the contract was unfair and thus unenforceable. None of these excuses withstands scrutiny. Ms. Bleak had no obligation to use Spotify. But when she did, she accepted the express conditions on which Spotify offered its service—including the obligation to arbitrate this dispute. The Court should enforce the arbitration agreement for the following reasons:

***First***, Ms. Bleak could not have signed up for the Spotify Premium subscription service (as she admits she did) without accepting Spotify's U.S. Terms and Conditions of Use ("Terms & Conditions"). As other courts have held, Ms. Bleak's inability to "recall" assenting to the Terms & Conditions does not raise an issue, given that the website is structured to require her assent before she could use the service. Further, Ms. Bleak's dispute falls within the arbitration provision. Her Complaint alleges Spotify's recurring charge disclosure on its subscription signup page does not precisely conform to Business & Professions Code §17602, and she therefore seeks restitution and damages. This run of the mill claim does ***not*** involve allegations of unauthorized use of the Spotify service, as would be required to fall outside the arbitration provision.

***Second***, under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the arbitrator (not the Court) must decide Ms. Bleak's claim that she entered into an illusory contract. The Court should compel arbitration to allow the arbitrator to address that issue. But if the Court reaches the illusory contract argument, it should reject it. The Terms & Conditions governed the relationship between Spotify and Ms. Bleak while she used the service. The unremarkable facts that Spotify could modify its standard contract on notice, and that either party could terminate their relationship (with provisions surviving the termination), hardly makes the agreement illusory.

***Third***, the arbitration agreement lacks the earmarks of oppression or surprise that might make it unconscionable. Like every modern consumer contract for a widely marketed product or service, the Terms & Conditions are standardized, not individually negotiated, making the

DAVIS WRIGHT TREMAINE LLP

arbitration provision, at most, minimally procedurally unconscionable, requiring plaintiff to make a strong showing of substantive unconscionability to make it unenforceable. In an effort to satisfy this standard, Ms. Bleak lists seven allegedly unconscionable aspects of the arbitration provision. But Spotify's arbitration provision has far more than the required modicum of bilaterality, and it identifies a well-known forum (AAA) for the efficient and inexpensive resolution of disputes. To the extent the arbitration provision limits the period within which Ms. Bleak must bring a claim or the relief she can obtain, it does so reasonably—and expressly subject to the limitations of California law. The AAA's consumer-specific processes are fair, not oppressive, and the Court should require Ms. Bleak to follow them.

***Fourth***, even if the Court does find an unconscionable term on Ms. Bleak's laundry list, it may (and should) sever that term and send the case to arbitration consistent with the agreement.

## II. ARGUMENT

### A. The Federal Arbitration Act Manifests a Strong Policy Favoring Arbitrating Disputes that Fall within an Arbitration Clause, as This Dispute Does.

The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Spotify's Motion to Compel Arbitration ("Motion") [Dkt. 18] established both conditions, requiring Ms. Bleak to arbitrate.

#### 1. Ms. Bleak Agreed to the Arbitration Provision.

Ms. Bleak contends she never agreed to Spotify's Terms & Conditions because did not "click on any link containing Spotify's Terms and Conditions of Use, nor [does she] recall seeing any references to Spotify's Terms and Conditions at any point during the sign-up process." Bleak Decl. ¶ 1. But a plaintiff cannot escape a contract through the expedient of professing a lack of memory, at least where the relevant technology required acceptance of the contract. Thus, Ms. Bleak's "failure of recollection as to whether or not [she] agreed to the [Terms & Conditions] does not create a genuine dispute in light of [Spotify's] evidence that agreeing to the [Terms & Conditions] is required during the registration process." *Merkin v. Vonage Am. Inc.*, 2014 WL 457942, at *3 (C.D. Cal. Feb. 3, 2014).

DAVIS WRIGHT TREMAINE LLP

Here, Spotify provided evidence that:

(a) "Spotify users must register to use any Spotify service, including the free service."

(b) "Ms. Bleak ***could not have created*** a Spotify account—free or paid—without passing through" the registration process.

(c) "[A] new user ***must*** select 'Sign up' at the bottom of the log-in box to create an account."

(d) "The sign-up box states: 'By clicking on Sign up, you agree to **Spotify's terms and conditions** and **privacy policy**.' The phrases 'Spotify's terms and conditions' and 'privacy policy' are both hyperlinks and clicking on the links leads a user to Spotify's Terms and Conditions of Use and Privacy Policy, respectively."

(e) "A visitor cannot register for the Spotify service without clicking one of the 'Sign up' buttons above this notice."

(f) "Ms. Bleak selected 'Sign up with your email address.'"

(g) "Once again, this page notified Ms. Bleak that 'By clicking on Sign up, you agree to **Spotify's terms and conditions** and **privacy policy**. And again, the phrases 'Spotify's terms and conditions' and 'privacy policy' are both hyperlinks and clicking on the links leads a user to Spotify's Terms and Conditions of Use and Privacy Policy, respectively."

(h) "Ms. Bleak could not have signed up for the Spotify service using her email address without selecting the 'Sign up' button below this [second] notice."

Lambert Decl. [Dkt. 19] ¶¶ 6-7 (emphases added), Ex. D (screen shot of sign up box), Ex. E (screen shot of email address sign up dialogue box); *see also* www.spotify.com (select "Log In" or "Try Premium" button at the bottom of the page and follow prompts). When Ms. Bleak selected her method of payment, Spotify also provided a "Learn more" link to Spotify's 30-Day Free Trial Terms and Conditions and provided a link to the same terms in Ms. Bleak's email receipt for her Spotify Premium purchase; the 30-Day Free Trial page also contains a link to the Spotify Terms & Conditions. Whitehead Decl. [Dkt. 20] ¶¶ 7-8, Exs. 1, 2, 5. Ms. Bleak refutes none of this. She offers no evidence it was possible for her to sign up for Spotify's streaming music service without expressly assenting to the Terms & Conditions.

"Nor does [Ms. Bleak's] asserted failure to read the [Terms & Conditions] mean that [she] did not agree to the [Terms & Conditions]." *Merkin*, 2014 WL 457942, at *3. California law binds parties to the contracts to which they assent, whether they read them or not. *Id.* "[C]ourts routinely enforce similar 'clickwrap' contracts where the terms are made available to the party

DAVIS WRIGHT TREMAINE LLP

assenting to the contract." *Id.*; *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008); *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2-3 (W.D. Wash. Aug. 17, 2007) (collecting cases holding "clicking" agreement to terms of a contract constitutes assent).

Ms. Bleak's reliance on *In re Zappos, Inc.*, 893 F. Supp. 2d 1058 (D. Nev. 2012), is misplaced. *In re Zappos* involved a "browsewrap" agreement, which—unlike the "clickwrap" agreements approved by the cases cited above and at issue here—does ***not*** require a user to click a button to "expressly manifest assent to the terms." *Id.* at 1063. Further, a Zappos user had to scroll down to see the link to the Zappos Terms of Use, and the "website [did] not direct a user to the Terms of Use when creating an account." *Id.* at 1064. In contrast, Spotify explicitly directed Ms. Bleak to the Terms & Conditions twice during her registration process, and she twice expressly manifested assent to these terms. Lambert Decl. ¶ 7, Exs. D, E. By twice clicking "Sign up," Ms. Bleak entered into a binding contract with Spotify. The fact that Spotify also makes its Terms & Conditions available to all website visitors at the "Legal" link at the bottom of each web page only increases the chance Spotify users will review those Terms & Conditions.

**2. Ms. Bleak's Claims Fall within the Arbitration Provision.**

Because the FAA reflects a "liberal federal policy favoring arbitration agreements," the Supreme Court requires "any doubts concerning the scope of arbitrable issues [to] be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Courts therefore should "construe arbitration clauses expansively." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-21 (9th Cir. 1999).

The broad arbitration clause in Spotify's Terms & Conditions encompasses "any dispute, claim or controversy arising out of or relating in any way to the Spotify Service or your use thereof." Lambert Decl. Ex. F § 19(i). This clause requires arbitration of all disputes that "touch matters" covered by the contract defining the parties' relationship. *Simula*, 175 F.3d at 721. Because Ms. Bleak's claims arise out of and relate directly to her purchase of the Spotify Service, her claims fall squarely within the arbitration clause.

4

SPOTIFY USA INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY
*Bleak v. Spotify USA Inc.*, Case No. CV 13-05653 CRB

DAVIS WRIGHT TREMAINE LLP

Tacitly admitting the broad arbitration clause covers her claims, Ms. Bleak invokes a "specific carve out in the Arbitration Clause." Opp. 6. She notes the agreement excepts from arbitration "any claims related to allegations of … unauthorized use of the Spotify Service." *Id.* She then argues Spotify ***itself*** engaged in unauthorized use of its own Service by allegedly charging her for automatic renewals without following the precise requirements of California's Business & Professions Code § 17602. The Court should reject this contorted argument, which would make the narrow exception to arbitration swallow the broad arbitration mandate.

Courts "examine the terms of a contract as a whole, giving them their ordinary meaning." *GECCMC 2005-C1 Plummer Street Office LP v. JP Morgan Chase Bank*, 671 F.3d 1027, 1033 (9th Cir. 2012). Here, Spotify's Terms & Conditions define "Spotify Service" as "the Spotify service, websites, or software applications." Lambert Decl. Ex. F § 1. Other provisions in the Terms & Conditions make clear that, as defined, "Spotify Service" refers to Spotify's consumer facing streaming music service, Spotify's website, and Spotify's software applications, which it makes available to users. For example, the Terms & Conditions say Spotify is "pleased to make [its] Service available to [consumers]," and the Spotify Service is licensed to and used by them. *See* Lambert Decl. Ex. F §§ 1, 4. The arbitration exception on which Ms. Bleak relies thus allows Spotify or its users to bring claims in court (not arbitration) based on allegations that someone has made an unauthorized use of Spotify's consumer facing streaming music service, Spotify's website, or Spotify's software applications. Although a user ***could*** make such an allegation (as discussed below in Section C(2)(a)), Ms. Bleak does not do so here. Instead, she claims she made an ***authorized*** use of the Spotify Service by purchasing Spotify's Premium streaming music service, but that Spotify charged her for that authorized use without following § 17602 to the letter. And that claim falls squarely within the language and intent of the arbitration agreement.

### B. The FAA Requires the Arbitrator Decide the Validity of the Terms & Conditions as a Whole.

Ms. Bleak makes a series of arguments attacking the Spotify Terms & Conditions as a whole. Under settled law, however, she must address those arguments to the arbitrator ***after*** she commences arbitration. The Court should grant the motion to compel and allow the arbitrator to address these issues.

### 1. The Arbitrator, Rather than the Court, Must Determine Whether Spotify's Obligations under the Terms & Conditions Are Illusory.

Ms. Bleak argues Spotify's ability to make unilateral changes to the Spotify Service and Agreements and terminate the agreement at any time makes the arbitration provision an "illusory promise." Opp. 10 (citing Lambert Decl. Ex. F §§ 2, 14). To support this argument, Ms. Bleak relies primarily on dicta from *Sparks v. Vista Del Mar Child & Family Servs.*, 207 Cal. App. 4th 1511 (2012), and *In re Zappos*, 893 F. Supp. 2d 1058. *See* Opp. 8-9; *compare In re Zappos*, 893 F. Supp. 2d at 1065. In essence, Ms. Bleak contends Spotify promises nothing in the Terms & Conditions as a whole in exchange for the subscriber's promises, making the agreement illusory. Opp. 10. But that argument speaks ***not*** to the validity of the arbitration agreement; instead, it addresses the validity of the contract. If accepted, the argument would void the entire contract, because an illusory promise creates a lack of consideration and voids any purported agreement.

The Supreme Court has squarely decided that an issue of this nature goes to the arbitrator, not the Court. The FAA governs whether the Court or the arbitrator determines the validity of a contract requiring arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-45 (2006). And challenges "to the validity of the contract as a whole . . . ***must*** go to the arbitrator." *Id.* at 449 (emphasis added); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1263-64 (9th Cir. 2006) (en banc). In *Buckeye*, for example, the plaintiff alleged the contract containing the arbitration agreement was illegal on its face under Florida law. 546 U.S. at 443. The Court nevertheless enforced arbitration, holding the "national policy favoring arbitration" mandates that result, even if it requires "a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void." *Id.* at 443, 448-49; *see also Prima Paint*, 388 U.S. at 402-04 (enforcing arbitration provision in contract alleged to be void because of fraudulent inducement).

Ms. Bleak's illusory promise argument plainly attacks the contract as a whole, not the arbitration clause in particular. Courts look to "the substantive basis of the challenge" to determine whether a party challenges the contract itself or only the arbitration provision. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1001-02 (9th Cir. 2010). In *Damato v. Time Warner Cable, Inc.*, 2013 WL 3968765 (E.D.N.Y. July 31, 2013), the court

DAVIS WRIGHT TREMAINE LLP

recently examined the question presented here: whether a defendant's promise to arbitrate was illusory because the defendant could unilaterally amend the arbitration clause. Like Ms. Bleak, the *Damato* plaintiffs relied on *Zappos* and a case cited by *Zappos*, *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1033-34 (D. Colo. 2012). *See Damato*, 2013 WL 3968765, at *5. The *Damato* court found *Zappos* unpersuasive because it failed to acknowledge or address the central question here: whether the arbitrator, rather than the court, should determine whether the contract is illusory. *Id.* *Zappos* also omitted any discussion of controlling Supreme Court precedent holding "the validity of the contract as a whole . . . ***must*** go to the arbitrator." *Buckeye*, 546 U.S. at 449; *see also Damato*, 2013 WL 3968765, at *5 (citing *Buckeye*, 546 U.S. 440; *Prima Paint*, 388 U.S. 395; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772 (2010)). And the cases on which *Zappos* relied similarly ignored these essential Supreme Court precedents. For example, although *Grosvenor* mentioned *Prima Paint* and *Rent-A-Center* (but not *Buckeye*), it declined to apply those cases and instead relied on a Tenth Circuit case that failed to discuss *Prima Paint* and never even addressed whether the arbitrator should decide the question. *Grosvenor*, 854 F. Supp. 2d at 1032-33 (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002)).[1]

"More compelling are cases that apply the Supreme Court's precedents and ***overwhelmingly*** reach the conclusion that the issue of illusoriness of the whole contract must be resolved by the arbitrator." *Damato*, 2013 WL 3968765, at *6 (collecting cases) (emphasis added). *See also Diversified Roofing Corp. v. Pulte Home Corp.*, 2012 WL 6628962, at *5 (D. Ariz. Dec. 19, 2012); *Gilroy v. Seabourn Cruise Line, Ltd.*, 2012 WL 1202343, at *5 (W.D. Wash. Apr. 10, 2012); *Curry v. Volt Info. Sciences*, 2008 WL 719214, at *2-3 (S.D.N.Y. Mar. 18, 2008).

---

[1] The other cases cited by Ms. Bleak (and *Zappos*) suffer from similar flaws, in part because many pre-date the 2006 Supreme Court decision in *Buckeye*. *See Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008) (no citation to *Buckeye* or *Prima Paint*); *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753 (7th Cir. 2001) (no citation to *Prima Paint*); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) (same); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) (citing *Prima Paint*, but finding challenge went to validity of arbitration agreement, which Hooters breached by promulgating unfair rules); *Harris v. Blockbuster, Inc.*, 622 F. Supp.2d 396 (N.D. Tex. 2009) (following *Morrison*); *Snow v. BE&K Constr. Co.*, 126 F. Supp. 2d 5 (D. Me. 2001) (no citation to *Prima Paint*); *Trumbull v. Century Mktg. Corp.*, 12 F. Supp. 2d 683 (N.D. Ohio 1998) (same).

DAVIS WRIGHT TREMAINE LLP

"Because [Ms. Bleak's] lack of consideration claim goes to the validity of the [Terms & Conditions overall] and not to the validity of the arbitration provision, the Court cannot consider it." *Diversified Roofing Corp.*, 2012 WL 6628962, at *5 (citing *Buckeye*, 546 U.S. at 445-46); *see also Rent-A-Center*, 130 S. Ct. at 2778 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.").

**2. Spotify's Terms & Conditions Contain Enforceable, Not Illusory, Promises.**

Even if the Court decides it must address the merits of Ms. Bleak's argument that the arbitration provision is illusory, it should find the Terms & Conditions and arbitration provision enforceable. In construing contracts, courts "favor a construction under which the agreement is legally valid over an interpretation which would require voiding the agreement." *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 912 (9th Cir. 2003). "Preference must be given to reasonable interpretations as opposed to those … that would make the contract illusory." *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989); *see also F. Jacobus Transport. Co. v. Gallagher Bros. Sand & Gravel Corp.*, 161 F. Supp. 507, 511 (S.D.N.Y. 1958) ("[T]o enforce the parties' agreement, the courts will construe it so as to find consideration or mutuality when the language is reasonably susceptible of such construction.").

Ms. Bleak labels Spotify's arbitration provision illusory because Spotify may make changes to the Terms & Conditions, provided it furnishes notice of material changes to its users. Opp. 10 (citing Lambert Decl. Ex. F § 2). Ms. Bleak also relies on a joint termination clause that allows either Spotify or its users to terminate the contract. *Id.* (citing Lambert Decl. Ex. F. § 14). But Ms. Bleak's argument ignores settled legal principles.

In the first place, the right to modify an agreement on notice hardly makes it illusory. "The implied covenant of good faith prevents one contracting party from 'unfairly frustrating the other party's right to receive the benefits of the agreement actually made.'" *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 706 (2013) (quoting *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000)). The fact a party reserves the power to terminate or modify a contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and

DAVIS WRIGHT TREMAINE LLP

reasonable notice. *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 15-16 (2000). "[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings." *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998) (quoting *James G. Freeman & Assocs., Inc. v. Tanner*, 56 Cal. App. 3d 1, 10 (1976)).

As in this case, the change-in-terms provision upheld in *24 Hour Fitness* allowed defendant Nautilus to revise the contract provided it gave plaintiff a copy of any material changes.[2] *Id.* at 1213-14. The court rejected plaintiff's argument that this provision rendered the arbitration agreement illusory and lacking in consideration, holding "Nautilus's discretionary power to modify the terms of the personnel handbook in writing notice indisputably carries with it the duty to exercise that right fairly and in good faith." *Id.* at 1214 (citing *Automatic Vending Co. v. Wisdom*, 182 Cal. App. 2d 354, 358 (1960)). "So construed, the modification provision does not render the contract illusory." *Id.*; *see also McIntosh v. Adventist Health/W. St. Helena Hosp.*, 2013 WL 968293, at *6 (N.D. Cal. Mar. 12, 2013) ("Under California law, defendants' ability to modify the terms of the employee handbook do not render the arbitration agreement illusory or unilateral so as to be unenforceable."); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1473-74 (2013) (holding unilateral modification clause did not make arbitration agreement illusory or substantively unconscionable); *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1465 (2012) ("A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims. Under this analysis, the arbitration agreement … is not illusory."). Settled California law therefore allows Spotify to modify the Terms & Conditions, with notice to users when modifications are material, without rendering the contract illusory.

Ms. Bleak also argues that because Spotify has the right to terminate the agreement through the mutual termination clause in the Terms & Conditions, the arbitration provision is

---

[2] In addition, Spotify users may cancel their subscription at any time if they determine changes to the Terms & Conditions affect them adversely. *See* Lambert Decl. Ex. F § 14.

DAVIS WRIGHT TREMAINE LLP

illusory and therefore void. Opp. 10 & n.9. (Ms. Bleak misleadingly omits the first sentence from her quotation of Section 14 of the Terms & Conditions—which makes clear the termination right is mutual, not just reserved to Spotify.) But even if a party terminates the Terms & Conditions (if, for example, a user cancels her account), the Terms & Conditions govern use of the Spotify Service before termination: Spotify provides ongoing streaming music services to its subscribers subject to the Terms & Conditions, unless and until one of the parties terminates the contract, at which time both parties' ***future*** obligations under the contract end. But neither party can terminate the arbitration provision under the Terms & Conditions: the "arbitration provision shall survive termination of these Agreements and the termination of [a user's] Spotify account." Lambert Decl. Ex. F § 19(i). Because the termination clause does not allow abrogation of the parties' obligations, neither the Terms & Conditions nor the arbitration provision is illusory.

### C. Spotify's Arbitration Provision Offers a Fair and Efficient Means of Resolving Disputes, and Thus Is Enforceable under California Law.

Having first claimed she made no agreement and then arguing the agreement she made was unenforceable, Ms. Bleak next argues the agreement is unfair because it provides an inexpensive mechanism for resolving disputes without resort to the formality of a court proceeding.

At its most basic level, Ms. Bleak's effort is misguided. "There is a strong public policy in favor of arbitration." *Serpa*, 215 Cal. App. 4th at 701 (citing both FAA and the California Arbitration Act). "An arbitration agreement governed by the FAA is presumed to be valid and enforceable." *McIntosh*, 2013 WL 968293, at *2 (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987)). Under California law, an agreement to arbitrate is invalid only if a court finds it is ***both*** procedurally ***and*** substantively unconscionable. *Serpa*, 215 Cal. App. 4th at 702-03. California also uses a "sliding scale" so "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Cisneros v. Am. Gen. Fin. Servs., Inc.*, 2012 WL 3025913, at *4 (N.D. Cal. July 24, 2012) (citation omitted).

#### 1. Spotify's Arbitration Provision Is Neither Oppressive nor Surprising.

Ms. Bleak argues Spotify's Arbitration provision is procedurally unconscionable because the Terms & Conditions are (like every consumer agreement in modern society) a standardized

DAVIS WRIGHT TREMAINE LLP

contract, the arbitration provision was allegedly difficult to find in the Terms & Conditions, the Terms & Conditions supposedly were accessible on Spotify's website only through a small "Legal" link at the bottom of the page, and Spotify failed to attach a copy of the AAA arbitration rules to the Terms & Conditions. Opp. 12-14. Ms. Bleak's arguments ignore precedent, the structure of the Terms & Conditions, and Spotify's registration process.

***First***, courts recognize "the times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011). "Courts have observed that '[w]hen, as here, there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable ***unless the degree of substantive unconscionability is high***.'" *Peng*, 219 Cal. App. 4th at 1470 (quoting *Serpa*, 215 Cal. App. 4th at 704) (emphasis added); *see also Hendricks v. AT&T Mobility, LLC*, 823 F. Supp. 2d 1015, 1023 (N.D. Cal. 2011).

***Second***, Ms. Bleak's description of the Terms & Conditions and the arbitration provision bears no resemblance to the Terms & Conditions as they appear in the record or on Spotify's website. Spotify uses a large, easy-to-read, sans-serif font for the Terms & Conditions and provides greater-than-standard line spacing to increase legibility. Lambert Decl. Ex. F; *see also* www.spotify.com/us/legal/end-user-agreement/ (the type-face appears significantly larger on screen than in Exhibit F). A table of contents appears at the beginning of the Terms & Conditions, allowing Spotify users to see at a glance the topics addressed in the contract, and users may jump to any provision by clicking on the section header in the table of contents. *Id.* Each section has a clearly marked, descriptive heading, which Spotify drafted in a significantly larger font, to draw the reader's attention. The arbitration provision is entitled "Choice of law, mandatory arbitration and venue," making its importance clear to readers. *Id.* Further, Spotify set off the arbitration provision with indented subsections. *Id.* In the printed version of the Terms & Conditions, the arbitration provision appears on page 5 of 6 (not 11 of 13 as described by Ms. Bleak). *See* Lambert Decl. Ex. F § 19. In addition, the class-action waiver provision appears in uppercase text to attract the reader's attention. *Id.*

DAVIS WRIGHT TREMAINE LLP

Courts regularly find clear, non-complex, easily understood arbitration provisions such as Spotify's unsurprising and enforceable, even when not set off by bold or uppercase text. *See Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1023 (N.D. Cal. 2009) (citing *Trend Homes, Inc. v. Superior Court*, 131 Cal. App. 4th 950, 959 (2005)); *Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, 2014 WL 116442, at *3-4 (N.D. Cal. Jan. 13, 2014) (no surprise when arbitration provision was "no more or less prominent than the other contractual terms").

***Third***, Ms. Bleak is simply wrong when she argues, without evidentiary support, the Terms & Conditions were accessible only through a "Legal" link on Spotify's website. The Lambert Declaration describes how Spotify ***twice*** made Ms. Bleak aware of the Terms & Conditions and provided links to those Terms & Conditions during her registration process, immediately adjacent to where she clicked a "Sign up" box. Lambert Decl. ¶ 7, Exs. D, E. By the time Ms. Bleak was able to use Spotify's streaming music service, she had already agreed to the terms twice.

Where the terms ***additionally*** appeared on Spotify's website is irrelevant. Ms. Bleak's failure to follow the adjacent links or to read the Terms & Conditions when she agreed to them does not make the arbitration provision surprising or oppressive. Although Spotify made the Terms & Conditions obvious and easy to find, it could not force Ms. Bleak to read them.

***Fourth***, "the failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability." *Peng*, 219 Cal. App. 4th at 1472; *see also Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1131 (C.D. Cal. 2006). Both *Peng* and *Lucas* cite and distinguish contrary California case law, noting those courts either specified that the effect of failing to include the AAA rules was minimally problematic or objected to the omission because the failure to attach the rules hid unfair terms from the plaintiff. *Peng*, 219 Cal. App. 4th at 1471-72 (citations omitted); *Lucas*, 450 F. Supp. 2d at 1131 (citations omitted). Here, the AAA rules are easy to find, *Peng*, 219 Cal. App. 4th at 1470 n.5, and "generally regarded to be neutral and fair." *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1126-27 (1999) (quoting *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318 (1986)). Indeed, the AAA has been a leader in assuring fair process for consumers, adopting the Consumer-Related

Disputes Supplementary Procedures and the Consumer Due Process Protocol to ensure a fair, impartial, and inexpensive process for the resolution of consumer disputes.

In short, the Spotify arbitration provision is neither surprising nor oppressive. Further, the provision uses an experienced neutral to offer a fair way to resolve disputes arising from the purchase of streaming online music, an entertainment service for which consumers have a wide variety of competing options. In these circumstances, the Court should find the Spotify arbitration provision, at most, "minimally procedurally unconscionable." *Hendricks*, 823 F. Supp. 2d at 1023; *Peng*, 219 Cal. App. 4th at 1470.

**2. Spotify's Arbitration Provision Is Fair and Bilateral.**

Due to the low level of procedural unconscionability, Ms. Bleak must show significant substantive unconscionability—i.e., the arbitration provision is so unjustifiably one-sided that it shocks the conscience—to avoid her obligation to arbitrate. *See Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001). She cannot make the required showing.

**a. The Arbitration Provision Has Sufficient Mutuality.**

Ms. Bleak argues the Spotify arbitration provision lacks mutuality because it exempts from arbitration "claims seeking to enforce, protect, or determine the validity or ownership of any intellectual property rights" ("IP claims") and "claims related to allegations of theft, piracy or unauthorized use of the Spotify Service" ("Theft claims"). Lambert Decl. ¶ 9, Ex. F § 19(ii). Arbitration agreements need not be perfectly bilateral to be enforceable. Rather, "[a]greements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 998 (9th Cir. 2010) (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004)). "[A] contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000) (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1536 (1997)).

Spotify's arbitration agreement contains far more than the required "modicum of bilaterality." The provision treats Spotify and its subscribers similarly: both Spotify and its



DAVIS WRIGHT TREMAINE LLP

subscribers must submit routine commercial disputes to arbitration, but both may bring IP claims or Theft claims in court. Lambert Decl. Ex. F § 19(ii). A court considered a similar provision in *In re DirecTV Early Cancellation Fee Litig.*, 810 F. Supp. 2d 1060 (C.D. Cal. 2011), *overturned on other grounds by Lombardi v. DirecTV, Inc.*, 2013 WL 6224642 (9th Cir. Dec. 2, 2013). The DirecTV arbitration clause listed several types of disputes that would go to court, including claims under the Communications Act of 1934, the Digital Millennium Copyright Act, the Electronic Communications Privacy Act, or any other statement of law governing theft of service. *DirecTV* 810 F. Supp. 2d at 1069. The plaintiff (like Ms. Bleak) argued the clause was not bilateral because only DirecTV (not the plaintiff) allegedly would bring claims under the excepted theories. The court, however, ruled the clause was not substantively unconscionable under California law because the exceptions applied to both DirecTV and its subscribers, "and it is conceivable that a plaintiff might have a claim against [DirecTV] for violation of those statutes." *Id.* In addition, the mere fact that the clause excepted these claims from arbitration "cannot be categorized as 'overly harsh.'" *Id.* (quoting *Pokorny*, 601 F.3d at 997).

In arguing to the contrary, Ms. Bleak ignores *DirecTV* and relies entirely on *Merkin*, 2014 WL 457942. *See* Opp. 15. But *Merkin* turns on the court's finding that subscribers would not assert claims involving fraudulent use, theft, or piracy of Vonage's phone service. 2014 WL 457942, at *10. Here, however, the structure of Spotify's streaming music service makes it easy to envision the possibility of users' IP or Theft claims against Spotify. For example, musical artists who subscribe to Spotify could sue for unlicensed use of the artists' music on the Spotify service. Spotify subscribers also could bring copyright suits against Spotify to protect playlists,[3] patent infringement suits related to Spotify's software systems, or trademark claims relating to Spotify's use of user-generated content or to allegedly infringing use by other Spotify users. In addition, users could bring unauthorized use claims alleging Spotify failed to protect the user from another user's spam messages or improper content.

---

[3] Indeed, Spotify recently defended against just such a suit in the United Kingdom, where a plaintiff claimed Spotify was infringing an alleged copyright in playlists. Any such lawsuit brought by a United States user would fall outside the scope of the arbitration clause based on the IP claims exception. *See* Lambert Decl. Ex. F § 19(ii)(a).

DAVIS WRIGHT TREMAINE LLP

Thus, even the exceptions from arbitration are bilateral, and the arbitration agreement has far more than "a modicum of bilaterality." *Pokorny*, 601 F.3d at 998 (quotation omitted). As a matter of law, it makes no difference that Spotify may be more likely to bring a Theft claim against a user than the reverse: the mutual exceptions for IP and Theft claims "cannot be categorized as 'overly harsh.'" *DirecTV*, 810 F. Supp. 2d at 1069.

**b. Spotify's Modification Provision Is Conscionable.**

Ms. Bleak contends Spotify's unilateral modification clause makes the arbitration provision unconscionable. *See* Opp. 15-16 (citing Lambert Decl. Ex. F § 2). But as discussed above in Section B(2), California law holds unilateral modification provisions do not give rise to substantive unconscionability. *Peng*, 219 Cal. App. 4th at 1473 ("unilateral modification provision is not substantively unconscionable"); *Serpa*, 215 Cal. App. 4th at 706-08 ("the implied covenant of good faith and fair dealing limits the [defendant's] authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable").[4]

**c. Limiting Forms of Relief Is Appropriate.**

Ms. Bleak argues the Spotify arbitration provision prevents the arbitrator from awarding injunctive or declaratory relief, making it non-mutual and substantively unconscionable. *See* Opp. 16-17 (citing Lambert Decl. Ex. F § 19(iii)). But Ms. Bleak's argument turns on a strained reading of the arbitration agreement that Spotify has never given (and never would give); she then argues her strained interpretation makes the clause unconscionable.

The provision precluding the arbitrator from awarding declaratory or injunctive relief does not apply to individual relief on Ms. Bleak's individual claims, such as (for example) an injunction precluding Spotify from continuing to bill Ms. Bleak or requiring it to clear her credit. (To avoid billing, of course, Ms. Bleak need only terminate her Spotify account, which she has not done or requested Spotify do to this day.) Rather, the restriction on declaratory and injunctive relief

---

[4] Courts have declined to follow *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), because it inaccurately stated California law. *See Peng*, 219 Cal. App. 4th at 1474 n.8 (criticizing *Ingle* for failing to discuss or follow *24 Hour Fitness*, 66 Cal. App. 4th 1199); *John v. Hanlees Davis, Inc.*, 2013 WL 3458183, at *4-6 n.4 (E.D. Cal. July 9, 2013) (following *24 Hour Fitness*, 66 Cal. App. 4th 1199, and related cases); *McIntosh*, 2013 WL 968293, at *6 (same).

DAVIS WRIGHT TREMAINE LLP

appears within the class action waiver paragraph of Spotify's arbitration provision. *See* Lambert Decl. Ex. F § 19(iii). The limitation logically applies only to declaratory or injunctive relief an arbitrator might award to benefit users ***other than*** Ms. Bleak, i.e., a so-called public injunction benefiting a class or the public as a whole. The limitation merely precludes Ms. Bleak from seeking injunctive relief for the benefit of others, which would make her a quasi-class representative in violation of her enforceable agreement to arbitrate on an individual basis.

Even if the limitation on injunctive and declaratory relief applied to individual arbitration, Ms. Bleak's argument fails. Ms. Bleak relies on her previous contention the arbitration provision lacks mutuality because IP and Theft claims are exempt from arbitration. *See* Opp. 16. In other words, Ms. Bleak argues the exclusion of injunctive and declaratory relief is unilateral, because Spotify can take IP and Theft claims to court and obtain injunctive and declaratory relief, while consumers are limited in arbitration to damages. *Id.* But, as explained above, the arbitration provision applies equally to Spotify and its subscribers, who likewise may bring IP and Theft claims in court. Ms. Bleak cites no cases requiring bilateral arbitration provisions to allow bilateral injunctive or declaratory relief.

Finally, even if the Court had doubt as to what sort of relief the arbitrator might grant Ms. Bleak if she were to prevail, the way to resolve doubt is to compel arbitration, stay the case, and see how the arbitrator resolves the issue. For example, the Ninth Circuit in *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013), "decline[d] to resolve in advance the question of what, if any, court remedy Plaintiffs might be entitled to should the arbitrator determine that it lacks the authority to issue the requested injunction." In that event, "Plaintiffs may return to the district court" after arbitration and address their entitlement to injunctive relief, if any. *Id.* Similarly, the arbitrator here should decide in the first instance the relief available.

**d. The Cost of AAA Consumer Arbitration Is Reasonable.**

Ms. Bleak argues the cost of arbitration will keep her from vindicating statutory rights. *See* Opp. 17-18. In so doing, Ms. Bleak mistakenly relies on *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), arguing *Italian Colors* affirmed an exception to the FAA's enforcement of arbitration agreements when arbitration would prevent the "effective

DAVIS WRIGHT TREMAINE LLP

vindication" of a statutory right. *See* Opp. 17-18. But Ms. Bleak misreads the case: this "analysis [concerning vindication of statutory rights] ***does not apply to state statutes*** such as those that form the basis of" Ms. Bleak's complaint. *Ferguson*, 733 F.3d at 935-36 (emphasis added). Instead, the "effective vindication" exception "rest[s] on the principle that other federal statutes stand on equal footing with the FAA," and no such principle protects state statutes, which cannot be enforced when they conflict with federal law. *Id.* at 936.

Further, Ms. Bleak's argument as to expense rests on an exaggeration of the hurdles she faces. "When 'a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'" *Damato*, 2013 WL 3968765, at *10 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). Ms. Bleak objects only to the $200 arbitration filing fee. *See* Opp. 18. (The AAA Consumer-Related Disputes Supplementary Procedures ("Consumer Rules") provide for consumers to pay that $200 fee, but then require the business to pay the remaining $1,500 filing fee and all hearing fees and arbitrator costs. *See* Hammond Decl. [Dkt. 28] Ex. A § C-8.) The $200 arbitration filing fee represents roughly 15% of the $1,450 complex civil case filing fee in San Francisco County Superior Court where Ms. Bleak filed this action. *See* http://sfsuperiorcourt.org/forms-filing/fees (follow "San Francisco Civil Fee Schedule" link) (last visited April 7, 2014). Thus, arbitration can hardly be considered "prohibitively expensive" compared to the litigation Ms. Bleak seeks to pursue.

Further, under AAA Rules, the low $200 AAA filing fee may be reallocated "pursuant to applicable law." Hammond Decl. Ex. A § C-8. And under California law, the AAA must ***waive all fees and costs***, exclusive of arbitrators' fees (which Spotify must pay), for consumers with a monthly income less than 300% of federal poverty guidelines. Cal. Code Civ. P. § 1284.3(b)(1). Ms. Bleak offered no evidence she would be required even to pay the fee under California law, much less that a potentially recoverable $200 filing fee makes arbitration of her claims "prohibitively expensive." *Green Tree*, 531 U.S. at 92.

#### e. The One-Year Statute of Limitation Is Reasonable

Ms. Bleak next claims the presumptive (but not iron-clad) one-year limit on bringing claims under the Spotify arbitration provision makes the entire provision substantively unconscionable. Opp. 18-19.

***First***, this limitation will have no effect on Ms. Bleak: she signed up for Spotify service on August 26, 2013, Whitehead Decl. ¶ 6, and brought her claim well within a year, on November 6, 2013. *See* Notice of Removal [Dkt. 1] Ex. A. She offers no explanation as to why she has standing to complain about a limitations period that has no bearing on her claim.

***Second***, "the weight of California case law strongly indicates that [a] six-month limitation provision is not substantively unconscionable." *Soltani*, 258 F.3d at 1043-44 (collecting cases). Indeed, the United States Supreme Court has upheld contract clauses limiting a party's time to bring a claim under a contract, provided the shorter period "shall be a reasonable period." *See id.* (quoting *Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608 (1947)). "California courts have afforded contracting parties considerable freedom to modify the length of a statute of limitations … provided it is reasonable … [and] provides sufficient time to effectively pursue a … remedy." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003). Here, discovery of the alleged injury is simple: a consumer will know within a month of registering for Spotify's Premium service whether Spotify charged their credit card for its streaming music services.

In arguing to the contrary, Ms. Bleak relies entirely on employment cases. *See* Opp. 18-19 (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107 (2004); *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138 (2012); *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242 (2011)). But "[t]he issue of delayed discovery is especially relevant in an employment context, where the cause of action may not be discovered for long periods of time." *See Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1153 (N.D. Cal. 2013). That concern has no bearing here.

***Third***, Ms. Bleak ignores key language in the Terms & Conditions: the arbitration provision states that "[i]f applicable law prohibits a one-year limitations period for asserting claims, any claim must be asserted within the shortest time period permitted by applicable law."

DAVIS WRIGHT TREMAINE LLP

Lambert Decl. Ex. F § 19(iv). Thus, if the arbitrator finds the one-year statute of limitation contrary to California law in a case where the limitation might otherwise bar the claim, the limit will not apply. But application of California law in that context lies first with the arbitrator.

**f. AAA's Discovery Provisions Comport with California Law**

Ms. Bleak contends the AAA arbitration rules improperly restrict her right to discovery, rendering Spotify's arbitration provision substantively unconscionable. Ms. Bleak misreads the AAA rules and overstates the need for discovery in individual arbitration of this nature. Indeed, one of the primary (and laudable) goals of arbitration is to offer a means of dispute resolution free from the formality, burden, and expense of litigation. *See Concepcion*, 131 S. Ct. at 1749.

Consistent with this principle, courts in this district have found "limitations on arbitral discovery no longer support a finding of substantive unconscionability" under *Concepcion*. *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1007-08 (N.D. Cal. 2012) (collecting cases). Indeed, in *Concepcion*, the Supreme Court explained the FAA would preempt a state court-made rule refusing to enforce consumer arbitration agreements that fail to provide for judicially monitored discovery. 131 S. Ct. at 1747. Such a rule would restrict arbitration agreements, simply because they are arbitration agreements, rather than on grounds applicable to contracts generally. *See id.*

Further, arbitrators have the ability to order discovery when necessary. The AAA Commercial Dispute Resolution Procedures ("Commercial Rules") and the Consumer Rules together govern arbitration under Spotify's Terms & Conditions. *See* Lambert Decl. Ex. F § 19(i); *see also* Hammond Decl. Ex. A § C-1(a) (stating the Commercial Rules and Consumer Rules both apply to consumer disputes and the Consumer Rules govern when they differ). The Consumer Rules do not address discovery, which the Commercial Rules therefore govern. *See* Hammond Decl. Ex. A. And the Commercial Rules require the arbitrator to "manage any necessary exchange of information among the parties" and state the "arbitrator may, on application of a party or on the arbitrator's own initiative: (i) require the parties to exchange documents." *Id.* Ex. B § R-22. In addition, the arbitrator may issue any other orders necessary to "achieve a fair, efficient and economical resolution of the case." *Id.* § R-23. Those orders could require depositions, if the arbitrator deems it appropriate. These provisions meet the standard set by California law even

DAVIS WRIGHT TREMAINE LLP

before *Concepcion*, i.e., that plaintiffs have the ability to obtain "discovery sufficient to adequately arbitrate their statutory claim." *See Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 182 (2002) (quoting *Armendariz*, 24 Cal. 4th at 106).

Finally, Ms. Bleak provides no evidence or explanation to support her bare assertion that Spotify possesses all the evidence relevant to her claims. *See* Opp. 20. Because Spotify's arbitration provision allows only individual claims, Ms. Bleak will have no need for information concerning all changes made to the Spotify website or how the changes were made, testimony from other class member witnesses, or information about three years of potential liability. *Id.* Indeed, the materials Spotify produced in support of its Motion should suffice, along with documents already in Ms. Bleak's possession, such as the email confirmation she received upon registering for Spotify's streaming music service. The AAA's discovery rules meet Ms. Bleak's needs. They do not make the arbitration agreement unconscionable.

**g. Spotify's Terms & Conditions Limit Liability as Permitted by Law.**

Ms. Bleak contends Sections 14 and 16 of the Terms & Conditions, which limit Spotify's liability "to the fullest extent permitted by law," Lambert Decl. Ex. F §§ 14, 16, make the entirely separate arbitration provision substantively unconscionable. Opp. 20-21. Ms. Bleak's argument ignores the language of the provisions at issue and binding Supreme Court precedent.

Spotify's Terms & Conditions clearly state that any limits on liability or damages must comply with applicable law. *See* Lambert Decl. Ex. F § 14 (limiting liability for terminating Spotify account "to the fullest extent permitted under applicable law"); *id.* § 16 (limiting punitive damages and aggregate liability "to the fullest extent permitted by law"). Thus, if these limitations contravene California law, they will not apply. More important, the arbitrator (not the Court) must decide the applicability of these limitations to a particular claim. *See Lee v. Goldline Intern'l, Inc.*, 2011 WL 1739989, at *1 (C.D. Cal. Apr. 27, 2011) (citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003)). "[A] party's challenge to another provision of the contract … does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 130 S. Ct. at 2778.

DAVIS WRIGHT TREMAINE LLP

The Court should enforce arbitration and allow the arbitrator to decide the effect of Sections 14 and 16 on Ms. Bleak's claims.

**D. California Allows Severance of Contract Clauses in the Interest of Justice.**

Finally, even if Ms. Bleak could show an unconscionable term among the seven arguments she has made—she cannot—the Court could sever any such term without doing violence to the agreement as a whole. "It is not enough for a plaintiff to simply show that one provision of the agreement is substantively unconscionable, as courts routinely sever certain clauses when there are no other objectionable components to the agreement." *Ruhe v. Masimo Corp*., 2011 WL 4442790, at *3 (C.D. Cal. Sept. 16, 2011); *see Chavez v. Bank of Am.*, 2011 WL 4712204, at *11 (N.D. Cal. Oct. 7, 2011) (severing provision of arbitration clause requiring Washington, D.C. forum). "To prevent severance and show that the entire agreement is substantively unconscionable, a plaintiff must show that the effect of the defective clause is such that the agreement itself is 'tainted with illegality.'" *Ruhe*, 2014 WL 4442790, at *3 (quoting *Armendariz*, 24 Cal. 4th at 124). Ms. Bleak has made no effort to make this showing.

## III. CONCLUSION

For these reasons, Spotify respectfully requests the Court (a) compel Ms. Bleak to arbitrate her claims on an individual basis and (b) stay this case pending the outcome of those proceedings.

Respectfully submitted this 7th day of April, 2014.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendant Spotify USA Inc.

By: */s/ Joseph E. Addiego III*
Stephen M. Rummage
Joseph E. Addiego III
Candice M. Tewell

DAVIS WRIGHT TREMAINE LLP