UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER

```
MELISSA BLEAK, individually and    )
on behalf of all others similarly  )
situated,                          )
                                   )
            Plaintiff,             )
                                   )
  VS.                              ) No. C 13-5653 CRB
                                   )
SPOTIFY USA INC., a Delaware       )
corporation,                       )
                                   ) San Francisco, California
            Defendant.             ) Friday
_____) April 25, 2014
```

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

| | |
|---|---|
| **For Plaintiff:** | HammondLaw, PC<br>1180 S. Beverly Drive, Suite 601<br>Los Angeles, California 90035<br>**By: Julian Ari Hammond, Esquire** |
| **For Defendant:** | Davis Wright Tremaine LLP<br>1201 Third Avenue, Suite 2200<br>Seattle, Washington 98101-3045<br>**By: Stephen Michael Rummage, Esquire** |
| | Davis Wright Tremaine LLP<br>505 Montgomery Street, Suite 800<br>San Francisco, California  94111-6533<br>**By: Joseph Edward Addiego, III, Esquire** |
| **Reported By:** | *Katherine Powell Sullivan, CSR #5812*<br>*Official Reporter - U.S. District Court* |

<u>**P R O C E E D I N G S**</u>

**APRIL 25, 2014**                                           **10:57 A.M.**

     **THE CLERK:** Calling case C 13-5653, Melissa Bleak versus Spotify.

    Appearances, Counsel.

     **MR. HAMMOND:** Good morning, Your Honor. Julian Hammond for the plaintiffs, plaintiff Melissa Bleak.

     **MR. RUMMAGE:** Good morning, Your Honor. Steve Rummage appearing this morning on behalf of Spotify. And with me is my partner, Joseph Addiego, and Kevan Choset, who is the general counsel of Spotify USA.

     **THE COURT:** Good morning.

  So let's try to cut through some of these issues. As to -- this is a question of whether the Court should compel arbitration.

     **MR. HAMMOND:** Correct.

     **THE COURT:** And a number of arguments, large number of arguments are raised as to why I shouldn't.

  And some are easier to deal with than others, but let's take the one that in my view -- you know, is there an arbitration agreement? That is, have the parties agreed to arbitrate whatever they agreed to arbitrate?

  And there are objections that are raised that -- basically, to the point that there wasn't really an agreement because of the way the terms and conditions were placed on the

1  website, and the mechanics of it all, the plaintiff didn't
2  really agree, knowingly agree to arbitration.
3      That's, in a nutshell, the first argument.  Which I
4  reject.
5      It appears to me that there were several opportunities
6  that were presented.  You know, there are a lot of ways to talk
7  about arbitration, but this way is satisfactory.
8          **MR. HAMMOND:**  And, Your Honor, we don't press that.
9          **THE COURT:**  Right.
10     Okay.  So now let's get to the -- the more interesting
11 argument and sort of where you do lose me, where I thought it
12 would be sort of an interesting argument, is the argument of
13 mutuality.
14     Is it that, you know, that you have to arbitrate
15 everything and they don't have to arbitrate anything?  I mean,
16 that's sort of the way it's argued.
17     But in this arbitration agreement what is carved out -- or
18 maybe it's carved in.  Let me just --
19         **MR. RUMMAGE:**  Carved out, Your Honor.
20         **THE COURT:**  Talked about collectability.
21         **MR. RUMMAGE:**  Oh.
22         **THE COURT:**  And that's in.
23         **MR. RUMMAGE:**  Yeah, that's not covered by the
24 carve-out.
25         **THE COURT:**  That's not covered by the carve-out.

1        **MR. RUMMAGE:**  That's correct.

2        **THE COURT:**  That is to say, that is to say, an issue
3    involving whether somebody owes somebody money for the services
4    that were rendered is arbitrable?

5        **MR. RUMMAGE:**  Correct, Your Honor.

6        **THE COURT:**  Matter of fact, in my view, it goes right
7    to the heart of the arbitration.  The purpose of an
8    arbitration, which is, most people fight about, Do I owe you
9    money or do I not owe you money?

10       And the argument that the plaintiff makes here is, I don't
11   owe you money because you set a process, a procedure of
12   automatic use of credit cards, or so forth, which is unfair,
13   unconscionable, dah dah dah dah dah.

14       And you're not saying, I didn't get the service.  You're
15   saying, I got the service but -- whether I wanted it or not is
16   another issue.  But I got the service, but I don't have to pay
17   you for that service.  And the reason I don't have to pay you
18   for that service is because you automatically collected it.
19   And I'm entitled -- I guess she's saying or he, I don't know
20   the gender.

21       **MR. HAMMOND:**  She.

22       **THE COURT:**  I'm entitled to a refund or credit, or
23   whatever it is, because this was an inappropriate collection;
24   it's not permitted for you to do that.

25       So isn't that one of the principal arguments that is being

*Katherine Powell Sullivan, CSR, RPR, CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*

1  made here by your client?

2          **MR. HAMMOND:**  I'd like to address a number of matters,
3  Your Honor.

4          **THE COURT:**  I think I've only raised one.

5          **MR. HAMMOND:**  Well, no, you started -- the first
6  proposition that was made was regarding refunds and is that
7  arbitrable.

8      The arbitration agreement actually says that in the event
9  that Spotify terminates -- terminates someone's service midway
10 through the month, that no refund is allowed and the person --
11 and the person does not have a claim.

12         **THE COURT:**  That's not this case.

13         **MR. HAMMOND:**  That's not this case.  But I just wanted
14 to make that point.

15         **THE COURT:**  I'm only saying a refund.  I'm only saying
16 a refund in terms of a remedial remedy.

17      If I give you money and you're not -- if I give you money
18 and you're not entitled to the money, I want it back.  Call it
19 a refund.  Call it an improper collection.  Whatever you want
20 to do.  That's what -- call it anything you want to call it.

21         **MR. HAMMOND:**  Well --

22         **THE COURT:**  And it doesn't make any difference what
23 you call it, is what I'm saying.

24         **MR. RUMMAGE:**  I think that's right, Your Honor.  And
25 it would actually cut both ways.

1       **THE COURT:**  Well, that's my point.

2       Now I'm going to the other side and saying, let's say you

3  tapped into this service.  I don't know how you got it.  You

4  got the service and you didn't pay.  You didn't pay for the

5  service.

6       All right.  Let's say they forgot to bill you.  And they

7  look in their records and they say, my goodness, your client

8  got three months and we didn't charge her.  Other defenses,

9  putting all this aside.  So they wake up and say, all right,

10 we're going to sue you.

11      You say, Not so fast.  There's an arbitration agreement.

12 You have to go to arbitration if you think I owe you the money.

13      So in my mind it was absolutely mutual --

14      **MR. RUMMAGE:**  Right.

15      **THE COURT:**  -- on the issue of collectability.  That's

16 in.

17      **MR. RUMMAGE:**  I think that's right, Your Honor.

18      **THE COURT:**  That's in.

19      And that's why this arbitration agreement, in the Court's

20 view at this time on that issue, survives.

21      Now, you may make some other arguments.  And you do.  But

22 those arguments are all to be decided by the arbitrator, not by

23 me.

24      So I'm going to -- I'm going to compel arbitration.  I'm

25 going to stay these proceedings.  And I'm going to wish you

```
 1  both luck, because that's it.
 2       I'm sort of finished with this.  And that's the way I
 3  think the legal framework resolves.
 4       Now, I may or may not write something on this.  I don't
 5  know whether I should or not.
 6            MR. HAMMOND:  Your Honor --
 7            THE COURT:  I can write all the arguments and so
 8  forth, if that's necessary.  But is it really necessary?
 9            MR. HAMMOND:  Thank you, Your Honor.
10       I believe it is.
11            THE COURT:  Okay.  Then I'll do it.  I'll do it.
12            MR. HAMMOND:  I'd like to make one point.  I disagree
13  with --
14            THE COURT:  Listen.  I've read your papers.  I know
15  exactly what your position is.  And it's set forth in great
16  detail in your papers.  So I understand that.
17       But I'm now telling -- if you want to address something
18  I've said, that's fine.
19            MR. HAMMOND:  I do want to address something you said.
20            THE COURT:  Go ahead.
21            MR. HAMMOND:  It's not a refund.
22       The allegations are that there were disclosures made that
23  were not in compliance with California law.  The failure to do
24  that led to the service being provided as a gift.  Hence, any
25  monies paid under the service is deemed to be provided back as
```

*Katherine Powell Sullivan, CSR, RPR, CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*

```
 1  by way of restitution.  That's number one.
 2       And number two, the -- the -- and this goes to the heart
 3  of what we say, that why this case should not be compelled to
 4  arbitration is that Spotify itself was not authorized,
 5  according to law, to touch the consumer's credit card.
 6       Pursuant to 176200 --
 7            THE COURT:  No, I'm sorry.  You lose me in this
 8  because you're talking about the merits.
 9       It seems to me you're talking about the merits of the
10  dispute.  That is you're talking about under the law were they
11  entitled to charge this, charge that, follow this procedure,
12  follow that procedure.
13            MR. HAMMOND:  No.  There is a carve-out to this
14  arbitration agreement.  The carve-out to the arbitration
15  agreement is threefold:
16       One, intellectual property claims.  This is not --
17            THE COURT:  What?
18            MR. HAMMOND:  Intellectual property claims.
19            THE COURT:  Yeah.
20            MR. HAMMOND:  This is not it.
21       Number two, claims associated with theft, piracy, and
22  unauthorized use of the Spotify service and websites.  The
23  website includes the charging of the credit card.  And the
24  charging of the credit card in a situation that Spotify was not
25  allowed to do --
```

1   **THE COURT:** And your problem with that argument is it
2 proves absolutely way too much.
3     In other words, the problem with it is almost everything
4 would come under that because you can characterize -- you can
5 characterize charges and services as, if you want to,
6 unauthorized use.
7     Every failure to pay, every violation of every agreement
8 is, quote, unauthorized unless you have some evidence that, oh,
9 I have a letter; they said I could do that.
10    So you prove everything. Your interpretation of that
11 carve-out carves out the entire case. Carves out the entire
12 business. I mean, I understand.
13    Look, I'm not a great fan of arbitration agreements. Be
14 that as it may, whether I'm a fan or not it doesn't make any
15 difference. I'm a District Court Judge.
16    But here it's clear that issues of collectability, of the
17 service between the parties what should be charged, how they
18 should be charged, falls right within it.
19      **MR. HAMMOND:** Sorry, I wasn't sure whether you were
20 looking at me or my friend.
21      **THE COURT:** I'm looking at both of you.
22      **MR. HAMMOND:** My issue is this: It's not
23 collectability. It's we're seeking an junction and a
24 declaration that their website be in compliance with California
25 law.

1  We are not allowed to bring an injunction or
2  declaration --
3       **THE COURT:** Oh, no. I thought that had to do with
4  class action, whether --
5       **MR. HAMMOND:** Well, the clause that is underneath the
6  arbitration agreement says class action or multi-plaintiff
7  cases.
8       So the characterization of that subparagraph of the
9  arbitration agreement is -- is to my -- to my knowledge and to
10 my belief, contorted. It's not just class action.
11      **THE COURT:** Fine. So this is what I'm going to do.
12 You're quite right to insist that I write something on it. And
13 I'm going to write something on it, and I'm going to address
14 these issues. And then if you disagree with it, as I'm quite
15 certain you will, you have whatever remedy the law provides
16 with respect to people who disagree with that.
17      **MR. HAMMOND:** Very good.
18      **THE COURT:** However, the order of the Court is I'm
19 compelling arbitration and I'm staying these proceedings.
20      Now, I'll give you my reasons because you're entitled to
21 my reasons. I sort of encapsulated my reasons here, but I'm
22 going to give you more because you raised other issues.
23      I'm not saying you raise them in good faith. And I'm not
24 saying they're frivolous. I'm just saying that, one, I
25 disagree with your basic reading of it; and, two, I think that

1  there are issues that you have raised that an arbitrator has to
2  decide, not me.
3      That's what I'm deciding.  And I'll try to make it as
4  clear as possible.  Okay.
5          **MR. HAMMOND:**  Very good.
6          **THE COURT:**  Thank you very much.
7          **MR. RUMMAGE:**  Thank you, Your Honor.
8      (At 11:09 a.m. the proceedings were adjourned.)
9                       - - - -

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Wednesday, May 14, 2014

*Katherine Sullivan*
_____

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter